IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 02-815 |
| v. | : | |
| | : | |
| JAMAL EZELL | : | |
| | : | |

**M E M O R A N D U M**

DUBOIS, J.                                                                                MARCH 3, 2006

**I.     INTRODUCTION**

On December 17, 2002, a federal grand jury sitting in the Eastern District of Pennsylvania returned a twelve count Indictment charging Mr. Jamal Ezell with interference with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951, and aiding and abetting, in violation of 18 U.S.C. § 2 (Counts 1, 3, 5, 7, 9, and 11), and carrying and using a firearm during a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c) and (2) (Counts 2, 4, 6, 8, 10, and 12). The charges arise out of six robberies in and around Philadelphia, Upper Darby, and Upper Merion Township, Pennsylvania between March 5, 2002 and March 20, 2002. Mr. Ezell was twenty-one years old at that time. On May 6, 2005, a jury found Mr. Ezell guilty on all counts of the Indictment.

Mr. Ezell now appears before the Court for sentencing. This Memorandum does not address any sentencing issues relating to defendant's convictions of Hobbs Act robbery. In this Memorandum, the Court focuses only on what the Court considers to be the unduly harsh

sentence required by 18 U.S.C. § 924(c) (using and carrying a firearm during a crime of violence).

A first conviction under 18 U.S.C. § 924(c) for carrying and using a firearm in furtherance of a crime of violence provides, inter alia, for a mandatory consecutive sentence of at least five years imprisonment. The penalty for that crime is increased to a mandatory consecutive sentence of at least seven years imprisonment if the defendant brandishes the firearm. In the case of second or subsequent convictions under § 924(c), a defendant faces, inter alia, a mandatory consecutive sentence of at least 25 years imprisonment for each conviction.

The Indictment charged in Count 2 (the first § 924(c) charge) that Mr. Ezell carried and used a firearm in furtherance of a crime of violence, and the jury found him guilty of that offense, which requires a consecutive sentence of at least five years imprisonment. Nevertheless, the Government argues that, under § 924(c), the Court must sentence Mr. Ezell to seven years imprisonment on Count 2, because the trial evidence established that he brandished a firearm, or aided and abetted the brandishing of a firearm, in furtherance of the robbery underlying Count 2. In addition, the Government argues that the Court must sentence Mr. Ezell to consecutive twenty-five year terms of imprisonment on each of Counts 4, 6, 8, 10, and 12, for a total sentence of 132 years on Counts 2, 4, 6, 8, 10, and 12.

Mr. Ezell challenged the imposition of the 132-year sentence pro se by raising constitutional claims under the Eighth Amendment, separation of powers principles, and the Due Process Clause; he further claims that the 132-year mandatory minimum sentence misconstrues § 924(c). See "Brief of Defendant Addressing the Constitutionality of Mandatory Minimum Sentences Under Federal Law" (Document No. 153, filed August 4, 2005). Defense counsel

supplemented the pro se claims by arguing that § 924(c) is not binding in the wake of United States v. Booker, 543 U.S. 220 (2005). See "Defendant's Sentencing Memorandum" (Document No. 171, filed February 14, 2006).

In addition to examining Mr. Ezell's challenges, the Court must address the question of whether it can engage in judicial fact-finding with respect to Count 2, and specifically, whether it can find that Mr. Ezell brandished a firearm, or aided and abetted the brandishing of a firearm, during the robbery underlying Count 2. Such a finding would increase the mandatory consecutive sentence from five years (the sentence for carrying and using the firearm) to seven years (the sentence for brandishing the firearm) on Count 2. The Court first turns to this question, and then addresses the significant issues related to the imposition of the sentence as a whole.

## II. JUDICIAL FACT-FINDING THAT IMPACTS A MANDATORY CONSECUTIVE SENTENCE

With respect to the brandishing issue in Count 2, the Court concludes that it can engage in judicial fact-finding on the ground that, where a mandatory consecutive sentence under § 924(c) is challenged post-Booker, a sentencing court must follow the Supreme Court's decision in Harris v. United States, 536 U.S. 545 (2002). In Harris, the Supreme Court concluded that judicial fact-finding that increases a statutory mandatory minimum sentence under § 924(c) is appropriate where a jury verdict has authorized the imposition of the minimum statutory sentence. The Harris Court held that such judicial fact-finding does not implicate the defendant's Sixth Amendment rights.[1] 536 U.S. at 558-60.

---

[1] The Harris Court reconciled this conclusion with the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000): "When a judge sentences the defendant to a mandatory minimum . . . the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any

The reasoning of the Harris decision is in tension with the Supreme Court's recent Sixth Amendment jurisprudence. Indeed, judges across the country have reached opposite conclusions about whether Harris has been implicitly overruled by the Supreme Court's decisions in Booker and Blakely v. Washington, 542 U.S. 296 (2004). The Ninth and Seventh Circuit Courts of Appeals have held that Harris has not been overruled,[2] although the Sixth Circuit Court of Appeals disagreed on narrow grounds,[3] as do other judges.[4]

This Court concludes that, although the reasoning of Harris v. United States, 536 U.S. 545 (2002), has been undermined by Booker and Blakely, it is not the role of this Court to overrule a decision of the Supreme Court, or even to anticipate such an overruling by the

---

other sentence within the range without seeking further authorization from those juries – and without contradicting Apprendi." 536 U.S. at 565.

[2] United States v. Dare, 425 F.3d 634, 641 (9th Cir. 2005) ("We agree that Harris is difficult to reconcile with the Supreme Court's recent Sixth Amendment jurisprudence, but Harris has not been overruled."); United States v. Jones, 418 F.3d 726, 732 (7th Cir. 2005) ("Under Harris, which the Supreme Court did not disturb in Booker, imposition of the . . . mandatory minimum sentence for a violation of 924(c)[ ] . . . did not violate the Sixth Amendment."); United States v. Duncan, 413 F.3d 680, 683 (7th Cir. 2005) ("Nothing in Booker or Blakely suggests that the Court reconsidered, much less overruled, its holding in Harris.").

[3] United States v. Harris, 387 F.3d 404, 414 (6th Cir. 2005) ("the § 924(c) Firearm-Type Provision mandatory minimum is not binding on the sentencing court unless the type of firearm involved is either admitted by the defendant or charged in the indictment and proved to a jury beyond a reasonable doubt"); id. (affirming the convictions in part, but vacating the sentences and remanding on the ground that the enhancement under the Firearm-Type Provision is not constitutional under Booker).

[4] United States v. Dare, 425 F.3d 634, 647 (9th Cir. 2005) (Bea, J., dissenting) ("I read Blakely and Booker as limiting cases to the extent those cases directly conflict with Blakely and Booker. . . . . While Harris may not be overruled in its entirety, it is limited by Booker . . . "); United States v. Malouf, 377 F. Supp. 2d 315, 326 (D. Mass. 2005) (Gertner, J.) ("[T]he breadth of the holdings in Booker and Blakely have in fact overruled Harris.") (emphasis in original).

Supreme Court.[5] Accordingly, this Court imposes sentence on Count 2 in reliance on the Harris case.

Based on the trial evidence, as to which there is no dispute, the Court finds that Mr. Ezell brandished a firearm, or aided and abetted the brandishing of a firearm, during the robbery underlying Count 2 of the Indictment. Thus, the Court must sentence Mr. Ezell to seven years imprisonment on Count 2.

## III.    SENTENCING OVERVIEW

The Court agrees with the Government, albeit reluctantly, that it must impose consecutive sentences of twenty-five years on each of Counts 4, 6, 8, 10, and 12. That means that the total term of imprisonment that Mr. Ezell faces on the six § 924(c) counts, i.e., Counts 2, 4, 6, 8, 10, and 12, is 132 years.

The Court concludes that sentencing Mr. Ezell to prison for longer than the remainder of his life is far in excess of what is required to accomplish all of the goals of sentencing. In imposing sentences in criminal cases, the Court is required by the governing statute, the Sentencing Reform Act, 18 U.S.C. § 3551 et. seq., to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [the Act]." 18 U.S.C. § 3553(a). The purposes of sentencing set forth in the Sentencing Reform Act are:

---

[5] See Roper v. Simmons, 543 U.S. 551, 594 (2005) ("It remains this Court's prerogative alone to overrule one of its precedents . . . . That is so even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for our earlier holding.") (internal quotation marks and citations omitted); State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle despite disagreement . . . for it is this Court's prerogative alone to overrule one of its precedents.") (internal citations omitted); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989) ("If a of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes by the defendant; and
(D) to provide the defendant with the needed educational or vocation training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

To give content to the Sentencing Reform Act's directives, Congress established an expert body, the U.S. Sentencing Commission, to promulgate United States Sentencing Guidelines ("Sentencing Guidelines") for criminal offenses. Although these Sentencing Guidelines are now "effectively advisory," rather than mandatory, this sentencing Court is still "require[d] . . . to consider Guidelines ranges." United States v. Booker, 543 U.S. 220, 273, 245 (2005).

Under the Sentencing Guidelines, without consideration of the § 924(c) charges but with an enhancement for brandishing a firearm, or aiding and abetting the brandishing of a firearm,

during each of the six robberies,[6] Mr. Ezell's sentencing range would be 168 to 210 months.[7] That sentence stands in sharp contrast to the sentence of 132 years required under § 924(c). The government has not provided a single convincing reason why a sentence under the Sentencing Guidelines would not achieve all of the goals of sentencing in this case.

After careful deliberation, the Court reluctantly concludes that none of defendant's arguments constitute grounds for reducing the 132-year mandatory consecutive sentence. Although the sentence is unduly harsh, the Court is bound by Congressional determination of what constitutes appropriate criminal penalties and controlling case law, both of which require

---

[6] In the wake of Booker, because the Sentencing Guidelines are now only advisory, not mandatory, the Court may engage in judicial fact-finding in determining the applicable Guideline Sentencing Range. See, e.g., United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("[T]he sentencing judge is entitled to find all of the facts appropriate for determining either a Guidelines sentence . . . ."); United States v. Antonakopoulos, 399 F.3d 68, 80 (1st Cir. 2005) ("Under Booker, a judge may do such fact finding in determining the Guidelines range."); United States v. Hughes, 396 F.3d 394, 378-79 (4th Cir. 2005) ("Consistent with the remedial scheme set forth in Booker, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines."); United States v. Milan, 398 F.3d 445, 456 (6th Cir. 2005) ("[T]he district court is free to – and obviously will – engage in fact-finding as it considers various sentencing options."). In determining what Mr. Ezell's sentence would be under the Sentencing Guidelines, the Court finds that Mr. Ezell brandished a firearm, or aided and abetted the brandishing of a firearm, during each of the six robberies based on facts that the government established during the trial.

[7] That Guideline sentencing range is calculated as follows: The base offense for each robbery under § 2B3.1 would be 20. Because victims were restrained in five of the six robberies, the offense level for each such robbery would be increased by two levels. Section 2B3.2(b)(3) provides that where, as in each of the six robberies, a firearm was brandished, the offense level would be increased by five levels. Thus, the adjusted offense level for five of the six robberies would be 27. Pursuant to the grouping provisions of § 3D1.4, five levels would be added to the count with the highest offense level – i.e., any count with an adjusted offense level of 27. Thus, the adjusted offense level for all six counts would be 32. That also would be the total offense level for all six counts. Defendant is in Criminal History Category IV. With a total offense level of 32, in Criminal History Category IV, the Guideline Imprisonment Range would be 168 to 210 months.

the Court to reject Mr. Ezell's challenges. Accordingly, the Court sentences Mr. Ezell, now twenty-six years old, to a prison term of 132 years and one day, the minimum allowed by the law.

**IV.    LEGISLATIVE HISTORY AND JUDICIAL INTERPRETATION OF § 924(c)**

Before turning to Mr. Ezell's specific challenges to § 924(c), it is necessary to set forth the history of the provision. See United States v. Angelos, 345 F. Supp. 2d 1227, 1233-35 (D. Utah 2004), aff'd 433 F.3d 738 (10th Cir. Jan. 9, 2006), (detailing the development of the provision). Congress enacted the Gun Control Act of 1968 following the assassinations of Martin Luther King, Jr. and Robert F. Kennedy. The Act sought to address the "increasing rate of crime and lawlessness and the growing use of firearms in violent crime." H.R. REP. No. 90-1577 at 1698, 90th Cong., 2d Sess., 7 (1968), 1968 U.S.C.C.A.N. 4410, 4412.

Section 924(c) was not included in the original gun control bill, but was offered as an amendment on the House floor. 114 Cong. Rec. 22231 (1968); see also Simpson v. United States, 435 U.S. 6 (1978) (reviewing the legislative history of 18 U.S.C. § 924(c)). Because the provision passed on the same day that it was introduced, it was not the subject of legislative hearings or committee reports. Only a few statements made during the floor debate shed light on the legislative intent of the provision. Representative Poff, the amendment's sponsor, stated that its purpose was to "persuade the man tempted to commit a Federal felony to leave his gun at home." 114 Cong. Rec. 22, 231 - 48 (1968) (Statement of Rep. Poff).

As originally enacted, § 924(c) afforded judges considerable discretion in sentencing. The provision imposed an enhancement of "not less than one year nor more than ten years" for a person who "uses a firearm to commit any felony for which he may be prosecuted in a court of the United States" or "carries a firearm unlawfully during the commission of any felony for

8

which he may be prosecuted in a court of the United States." Simpson v. United States, 435 U.S. 6, 7-8, (1978) (citing 18 U.S.C. § 924(c) (1968)). If a person was convicted of a "second or subsequent" violation of § 924(c), the additional penalty was "not less than 2 nor more than 25 years," which could not run "concurrently with any term of imprisonment imposed for the commission of such felony." Id.

The Supreme Court and the Department of Justice initially limited the application of penalties under § 924(c). In 1971, for example, the Department of Justice advised prosecutors not to proceed under § 924(c) if the predicate felony statute provided for "'increased penalties where a firearm was used in the commission of the offense.'" Busic v. United States, 446 U.S. 398, 406 (1980) (quoting 19 U.S. Attys. Bull. No. 3, p.63 (U.S. Dept. of Justice, 1971)) (internal citation omitted). In Simpson v. United States, 435 U.S. 6 (1978), the Court barred a sentence under § 924(c) where the underlying felony statute already included an enhancement for use of a firearm. Relying on floor statements from Representative Poff, the Court held that "the purpose of § 924(c) is already served whenever the substantive federal offense provides enhanced punishment for the use of a dangerous weapon." 435 U.S. at 13. In Busic v. United States, 446 U.S. 398 (1980), the Court went further, holding that prosecutors could not file a § 924(c) count instead of the enhancement provided for in the underlying federal statute.

In 1984, Congress responded to Simpson and Busic by amending § 924(c) "so that its sentencing enhancement would apply regardless of whether the underlying felony statute 'provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device.'" United States v. Gonzales, 520 U.S. 1, 10 (1997) (citing Comprehensive Crime Control Act of 1984, Pub. L. 98-47. § 1005(a), 98 Stat. 2128-39). The 1984 amendment also

9

established a five-year mandatory consecutive sentence for using and carrying a firearm during commission of a crime of violence. Id. In later amendments, Congress further increased the penalties under § 924(c). See, e.g., Pub. L. No. 99-308, § 104(a)(2)(A)-(F), 100 Stat. 456 (1986); Pub. L. No. 100-690, § 6212, 102 Stat. 4361 (1988).

The increased penalties for "second or subsequent" § 924(c) convictions produced litigation over whether multiple convictions in the same proceeding were subject to enhanced penalties, and whether the penalties were required to be served consecutively to state convictions. The Supreme Court answered those questions in the affirmative in Deal v. United States, 508 U.S. 129 (1993), and United States v. Gonzales, 520 U.S. 1 (1997). In Deal, the defendant was convicted of committing six different bank robberies on six different dates, each time using a gun. He was sentenced to five years for the first § 924(c) charge, and twenty years for each of the other five § 924(c) charges – a total of 105 years. In affirming his sentence, the Court held that a "second or subsequent" conviction could arise from a single prosecution. Id. at 133-34. In Gonzales, the Court held that a sentence under § 924(c) could not be served concurrently with an unrelated state sentence. Id. at 9-10.

This legislative history reveals that if the original version of § 924(c) governed Mr. Ezell's sentencing, the Court would be authorized to impose a mandatory minimum sentence of eleven years on the § 924(c) counts. However, after nearly forty years of judicial interpretation and Congressional amendments, the Court is bound by the current version of § 924(c) which requires a sentence of 132 years on those counts.

## V. MR. EZELL'S CHALLENGES TO § 924(c)

### A. Defendant's First Pro Se Argument: § 924(c) as applied in this case requires cruel and unusual punishment in violation of the Eighth Amendment.

Mr. Ezell argues that the 132-year mandatory minimum sentence is cruel and unusual in violation of the Eighth Amendment. Controlling precedent requires the Court to reject this argument.

The Eighth Amendment "contains a narrow proportionality principle that applies in noncapital sentences," but it "does not require strict proportionality between the crime and the sentence." Ewing v. California, 538 U.S. 11, 20, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991)) (internal quotations omitted). The Eighth Amendment has been interpreted to "forbid[] only extreme sentences that are 'grossly disproportionate' to the crime." Id. (quoting Harmelin, 501 U.S. at 1001) (Kennedy, J., concurring in part and concurring in judgment). It is only "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Harmelin, 501 U.S. at 1004-05 (Kennedy, J., concurring in part and concurring in judgment).

In the past century, the Supreme Court only twice upheld challenges to state and federal sentences based on Eighth Amendment grounds. See United States v. Angelos, 433 F.3d 738, *26-*29 (10th Cir. Jan. 9, 2006). In Weems v. United States, 217 U.S. 349 (1910), the Court invalidated under the Eighth Amendment a sentence of fifteen years in chains and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a public document. In Solem v. Helm, 463 U.S. 277 (1983), the Court invalidated under the Eighth Amendment a

11

sentence of life imprisonment without the possibility of parole imposed under state law against a nonviolent recidivist whose final crime was writing a "no account" check with intent to defraud.

In contrast, the Supreme Court has rejected Eighth Amendment challenges to life sentences in cases in which most jurists would agree that the crimes were less serious than Mr. Ezell's six armed robberies. See e.g., Harmelin, 445 U.S. at 285 (upholding life sentence without parole for possession of 672 grams of cocaine); Rummel, 445 U.S. at 285 (upholding life sentence with the possibility of parole under state recidivist statute for successive convictions of (1) fraudulent use of a credit card to obtain $ 80 worth of goods or services, (2) passing a forged check in the amount of $ 28.36, and (3) obtaining $ 120.75 by false pretenses). In Deal v. United States, 508 U.S. 129 (1993), a case with facts strikingly similar to Mr. Ezell's, the Court declined to "tarry over" the petitioner's contention that his 105-year sentence was "so glaringly unjust," concluding that there is "no reason why it is 'glaringly unjust.'" 508 U.S. at 137.[8]

Courts of Appeals have consistently rejected the claim that the mandatory sentencing provisions of § 924(c) violate the Eighth Amendment. In United States v. Angelos, 433 F.3d 738, (10th Cir. Jan. 9, 2006), the Tenth Circuit concluded that "there is no merit to [a defendant's] Eighth Amendment challenge to his sentence under § 924(c)." Id. at * 36. In United States v. Beverly, 369 F.3d 516 (6th Cir. 2003), the Sixth Circuit rejected an Eighth Amendment challenge to § 924(c) sentences, noting that "the Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." In United States v. Campusano, 947

---

[8] Although it appears that the petitioner in Deal did not raise an Eighth Amendment challenge, this Court finds the discussion about what is "glaringly unjust" informative.

F.2d 1 (1st Cir. 1991), the First Circuit similarly rejected such a claim, stating "the mere fact that a sentence is mandatory and severe does not make it cruel and unusual within the meaning of the Eighth Amendment." Id. at 4. In United States v. Wilkins, 911 F.2d 337 (9th Cir. 1990), the Ninth Circuit ruled likewise. Id. at 340-41. Although the Third Circuit has not addressed this issue directly, it is bound by Supreme Court precedent, which requires the same conclusion reached by every other circuit to address the question.

Under the controlling precedents, this Court must also conclude that the 132-year mandatory consecutive sentence which Mr. Ezell faces under § 924(c) does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

### B. Defendant's Second Pro Se Argument: § 924(c) violates the principle of separation of powers.

Mr. Ezell argues that the mandatory sentencing provisions of § 924(c) violate the principle of separation of powers. This argument cannot be sustained.

It is well established that Congress has the authority to define mandatory minimum sentences and that such sentences do not violate separation of powers principles. In Chapman v. United States, 500 U.S. 453 (1991), the Supreme Court upheld the constitutionality of a mandatory minimum sentence, declaring that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." Id. at 467 (citing Ex parte United States, 242 U.S. 27 (1916)). As that case noted, "[d]eterminate sentences were found in this country's penal codes from its inception, and some have remained until the present." Id. (internal quotations and citations omitted). Congressional power to define criminal punishments includes the power to create mandatory minimum sentences for crimes without running afoul of

13

separation of powers doctrine. See, e.g., United States v. Hammer, 3 F.3d 266, 269 (8th Cir. 1993) ("The people's elected representatives may, if they wish, deprive the courts of sentencing discretion by fixing the punishment for crime by statute."). In United States v. Chaidez, 916 F.2d 563, 565 (9th Cir. 1990), the Ninth Circuit held that "the mandatory minimum penalty provision of 18 U.S.C. § 924(c)(1) does not violate the doctrine of separation of powers." This Court sees no basis for reaching a different conclusion in this case.

### C. Defendant's Third Pro Se Argument: § 924(c) violates due process of law.

Mr. Ezell argues that the 132-year mandatory minimum sentence violates due process of law because it does not afford him individualized sentencing. This argument is rejected.

The Courts of Appeals have uniformly held that the mandatory sentencing provisions of § 924(c) do not violate due process of law. See, e.g., United States v. Campusano, 947 F.2d 1, 3 (1st Cir. 1991); United States v. Hatch, 925 F.2d 362, 362 (10th Cir. 1991); United States v. Hamblin, 911 F.2d 551, 555-56 (11th Cir. 1990); United States v. Wilkins, 911 F.2d 337, 339-40 (9th Cir. 1990); United States v. Goodface, 835 F.2d 1233, 1235-37 (8th Cir. 1987). There is no ground for departing from this precedent in this case.

### D. Defendant's Fourth Pro Se Argument: The 132-year mandatory minimum sentence is not required under § 924(c).

Mr. Ezell argues that the 132-year mandatory minimum sentence misconstrues § 924(c). Specifically, he claims that the text of the statute does not compel the construction that a second or subsequent conviction occurs when a defendant is charged in one indictment with more than one § 924(c) offense and a single judgment of conviction is entered on that indictment.

In Deal v. United States, 508 U.S. 129 (1993), the Supreme Court rejected this precise argument. The Court held in Deal that, although the defendant's subsequent five convictions were based on counts in a single indictment and the counts were joined for trial, each of those convictions constituted a "second or subsequent conviction" within the meaning of § 924(c). Id. 132-36. In reaching that conclusion, the Court focused on the plain meaning of the text of § 924(c), and rejected the rule of lenity. Because Deal addresses and rejects Mr. Ezell's argument, it cannot succeed in this case.

**E. Defendant's Counseled Argument: Booker renders the penalty provisions of § 924(c) Advisory.**

Mr. Ezell's counsel argues that, in the wake of United States v. Booker, 125 543 U.S. 220 (2005), the penalty provisions of § 924(c) are advisory. Counsel contends that, post-Booker, it is the duty of the Court to impose a sentence which is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to fulfill the purposes of sentencing which are set forth in § 3553(a)(2). Counsel argues that, post-Booker, the sentences prescribed by § 924(c) are no more mandatory than the Guidelines themselves, and that the penalties set forth in that statute are properly read as advisory, to be "considered" along with all other § 3553(a) factors. This argument cannot be sustained.

In Booker, the Supreme Court held that the Sentencing Guidelines, when construed as mandatory, violate the Sixth Amendment right to trial by jury if a sentence is increased based on factual findings by a judge. The Court remedied this constitutional infirmity by making the Guidelines "effectively advisory." 543 U.S. at 273. Thus, Booker leaves sentencing discretion to

the district court, guided by the Guidelines, the § 3553(a) factors, and other statutory concerns, subject to any applicable statutory mandatory minimum and maximum sentencing provisions.

Contrary to counsel's argument, however, "Booker did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence." United States v. Robinson, 404 F.3d 850, 862 (4th Cir. 2005) (reaching this conclusion when rejecting a Booker-based challenge to a 924(c) penalty). Indeed, Courts of Appeals have consistently concluded that Booker's rendering of the Sentencing Guidelines as advisory does not apply to statutory mandatory minimum sentences, such as those in § 924(c). See, e.g., United States v. Sanchez, 123 Fed. Appx. 510, 511 n.2 (3d Cir. 2005) (unpublished); United States v. Bermudez, 407 F.3d 536, 545 (1st Cir. 2005); United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005); United States v. Moore, 401 F.3d 1220, 1222 n.1 (10th Cir. 2005); United States v. Rojas-Coria, 401 F.3d 871, 874 n.4 (8th Cir. 2005); United States v. Shelton, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005); United States v. Sharpley, 399 F.3d 123 (2d Cir. 2005); United States v. Joiner, 123 Fed. Appx. 681, 682 (6th Cir. 2005) (unpublished); United States v. Duncan, 413 F.3d 690, 683 (7th Cir. 2005). "Put simply Booker . . . do[es] not affect the imposition of statutory minimum sentences." United States v. Duncan, 413 F.3d 690, 683 (7th Cir. 2005).

Moreover, in United States v. Kellum, the Third Circuit squarely rejected the argument that a district court has authority under 18 U.S.C. § 3553(a) to impose a sentence below the statutory mandatory minimum if it believes that the statutory mandatory minimum is greater than necessary to achieve the goals of sentencing. Id. at 287-88. Although Kellum predates Booker, nothing in Booker contradicts the principles announced in Kellum. Consistent with pre-Booker

sentencing, district judges can only depart below a mandatory minimum sentence in two narrow circumstances: (1) upon a government motion for substantial assistance under 18 U.S.C. § 3553(e),[9] and (2) upon application of the safety valve under 18 U.S.C. § 3553(f).[10] See United States v. Kellum, 356 F.3d 285, 289 (3d Cir. 2004).

---

[9] 18 U.S.C. § 3553(e) describes the Court's "[l]imited authority to impose a sentence below a statutory minimum." That provision provides:
> (e) Limited authority to impose a sentence below a statutory minimum. Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

[10] 18 U.S.C. § 3553(f) provides for the "[l]imitation on applicability of statutory minimums in certain cases." This provision is applicable:
> if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act [21 USCS § 848]; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

These two narrow circumstances are not presented in Mr. Ezell's case, and defendant's arguments cannot prevail. Thus, the Court concludes that there is no basis for imposing a sentence on the § 924(c) counts of less than the 132-year mandatory consecutive sentence.

## VI.   CONCLUSION

The 132-year consecutive sentence mandated by § 924(c) in this case is unduly harsh. However, this Court is bound by the statute and controlling precedent. Accordingly, the Court sentences Mr. Ezell, inter alia, to serve a term of imprisonment of 132 years on the six § 924(c) counts of conviction, and a consecutive term of imprisonment of one day on the six robbery counts of conviction, for a total sentence of 132 years (1584 months) and one day.

An appropriate Order follows.