IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
      :
      v.      :      CRIMINAL NO. 02-815-01
      :
JAMAL EZELL      :

ORDER

AND NOW, this     day of     , 2013, upon consideration of Counsel's Amended Motion Pursuant to Title 28 U.S.C § 2255 on behalf of Defendant Jamal Ezell, and upon consideration of the Government's response thereto, and further upon consideration of any hearings or arguments held pursuant thereto, it is hereby

ORDERED, ADJUDGED AND AGREED

that Counsel's Amended Motion Pursuant to Title 28 U.S.C § 2255 is hereby granted, and the following requested relief ordered:

BY THE COURT:

_____
                                     J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 02-815-01 |
| | : | |
| JAMAL EZELL | : | |

### COUNSEL'S AMENDED MOTION PURSUANT TO TITLE 28 U.S.C § 2255

Attorney, Luther E. Weaver, III, Esquire, on behalf of Defendant Jamal Ezell, hereby files this

Amended Motion pursuant to Title 28 U.S.C § 2255, and in support of said Motion, the Defendant

hereby states as follows:

I.       Procedural History

1.       On December 17, 2002, a federal grand jury in the Eastern District of Pennsylvania

returned a 12-count Indictment charging Defendant Jamal Ezell with six counts of Hobbs Act robbery,

in violation of 18 U.S.C. § 1951 (Counts 1, 3, 5, 7, 9 and 11), six counts of using and carrying and

aiding and abetting the using and carrying of a firearm during a crime of violence, in violation of 18

U.S.C. §§ 924(c) and 2 (Counts 2, 5, 6, 8, 10 and 12). The charges arise out of six robberies in and

around Philadelphia, Upper Darby, and Upper Merion Township, Pennsylvania committed between

March 5, 2002 and March 20, 2002.

2.       A four-day trial was held from May 2 to May 6, 2010. On May 6, 2005, Mr. Ezell was

found guilty by a jury on all counts of the Indictment. The trial transcripts are attached hereto as

Exhibit "A" (May 2, 2013); Exhibit "B" (May 3, 2013); Exhibit "C" (May 4, 2013); Exhibit "D" (May

5, 2013) and Exhibit "E" (May 6, 2013).

3.       On March 3, 2006, the Defendant was sentenced by the Court to serve a term of

imprisonment of 132 years (1584 months) and one day. The sentence was imposed as follows:

- Count(s) 1, 3, 5, 7, 9 and 11: imprisonment 1 day; supervised release 3 years; restitution in the sum of $15,000.00; special assessment $1,200.00;

- Count 2: Imprisonment 84 Months, consecutive to Counts. 1, 3, 5, 7, 9 and 11; supervised release 5 years; restitution in the sum of $15,000; special assessment of $1,200.00;

- Counts 4, 6, 8, 10, 12: imprisonment 300 months on each Count, to be served consecutively, and consecutive to Counts. 1, 2, 3, 5, 7, 9 and 11; supervised release 5 years; restitution in the sum of $15,000; special assessment $1,200.00. The judgment of the District Court was formally entered on March 7, 2006.

4. On February 19, 2008, the United States Court of Appeals for the Third Circuit affirmed the judgment of the District Court entered on March 7, 2006. This Order was formally entered in the docket of the District Court on March 12, 2008.

5. Following the direct appeal, the Defendant filed a number of pro se Motions in district court, including a pro se Motion pursuant to Title 28 U.S.C. §2255 to, set aside and correct the sentence imposed by the Court on March 3, 2006.

6. On May 9, 2013, undersigned counsel was appointed to represent the Defendant with regard to the Defendant's pending pro se Motion pursuant to §2255, and in all related proceedings.

II. General Factual Background

A. The Offense Conduct

7. During a two-week period beginning on March 2, 2002, allegedly the Defendant and several others participated in the armed robbery of six different establishments in Philadelphia and Montgomery Counties.

8. The pattern of these robberies was essentially the same. Two or three men would enter the establishments when few or no customers were in the establishments, and upon entering, one of the

three would display a firearm and announce the robbery. The victims were then bound with either duct tape or some other form of restraint, and money and sometimes merchandise, was taken.

B.   Defense Trial Strategy

9.   The trial transcript reveals that the Defendant's only defense presented at trial was that the Court lacked jurisdiction to prosecute any of the offenses. Defense counsel argued and cross-examined witnesses pursuing the theory that there was an insufficient effect on interstate commerce with which to sustain federal jurisdiction, primarily because no customer transactions were being conducted when the robberies were in process.

10.   To establish the element of an effect upon interstate commerce, the Government called witnesses related to each establishment that was robbed who generally testified that each of the stores and businesses obtained goods and services which were transported in interstate commerce.

11.   The Government also called Jewell and Mitchell as witnesses and they described in detail the manner in which the robberies were committed and the Defendant's alleged role in each of the offenses. The Government also called several of the victim employees and they testified as to what occurred during each of the robberies and the fear that they experienced at the time the offenses were committed.

III.   Grounds for the Motion

A.   The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That Defense Counsel Failed to Object to Inadmissible Bad Act Evidence Which Established That the Defendant Had Prior Arrests and/or Convictions

12.   Defense counsel's failure to object to inadmissible evidence can constitute ineffective assistance of counsel, if such failure to object falls below an objective standard of reasonableness.

Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052 (1984), Broaster v. Houtzdale, 2011 U.S. Dist. LEXIS 86832, p. 12 (2011) (DuBois, J).

13.     On May 5, 2005, day four of the trial, the Government called as a witness Detective Donald Beese of the Upper Darby Township Police Department. Detective Beese testified that he received information from the Abington Police Department that the Defendant, Jamal Ezell, may be a "third" suspect in the robbery of the ABC Auto Parts Store in Upper Darby, Pennsylvania, on March 5, 2002.

14.     Detective Beese was invited by the Government to testify regarding how he developed a photo spread to show to victims, which included the photo of the Defendant. On direct examination, the Government developed evidence that the Defendant's photograph was in the Philadelphia Police Department database, implying that the Defendant had a prior police record. There was no objection to this testimony. (Exhibit "D," Tr. May 5, 2005, p. 16).

15.     Further, the Government called Detective Robert Geary, a Philadelphia Police Detective, who was involved in investigating the robbery of the Wine and Spirits Shop at 1100 S. Delaware Avenue. (Exhibit "D," Tr. May 5, 2005, pp. 22-23). Detective Geary read one of the alleged confessions of the Defendant, and he identified a photo spread shown to witnesses regarding the robbery of the Delaware Avenue Wine and Spirits Shop. (Exhibit "D," Tr. May 5, 2005, pp. 25-26). At this point, the jury had already heard the source of the photo.

16.     Next the Government called Detective James Godby of the Upper Merion Township Police Department. (Exhibit "D," Tr. May 5, 2005, pp. 39-40). Detective Godby, under questioning by the Government, explained how photo spreads are developed. He explained that they are created from a database going back approximately 5 years which database includes anyone who was arrested in Pennsylvania. (Exhibit "D," Tr. May 5, 2005, p. 44). Godby further testified that a photo spread was

developed regarding the Defendant using the same criminal database he described, thereby clearly advising the jury that the Defendant had suffered prior arrests, and possibly convictions, in Pennsylvania. (Exhibit "D," Tr. May 5, 2005, pp. 45-51).

17.     Godby further explained that he had a first name being *Jamal,* and that he searched all of the Jamals who were arrested in Pennsylvania from the same database. (Exhibit "D," Tr. May 5, 2005, pp. 46-47).

18.     The Detective further testified that after he was able to identify Jamal Ezell as a subject, he made arrangements to have Ezell brought in "from the Philadelphia Prison System." There was no objection to any of this testimony, and no curative or limiting instruction was given. (Exhibit "D," Tr. May 5, 2005, p. 51).

19.     It was not necessary to elicit the source of the photographs into evidence, which evidence clearly established in the minds of the jury that the Defendant suffered prior arrests, possibly prior convictions, and that he was then currently imprisoned.

20.     There was no objection to any of this testimony by defense counsel. In the absence of an objection, no limiting or curative instruction was requested of the Court.

21.     In addition, on cross examination, defense counsel himself pointed out that the Defendant was in custody in Philadelphia when Detective Godby brought him into Montgomery County to face charges. (Exhibit "D," Tr. May 5, 2005, p. 63).

22.     The introduction of these facts, that the Defendant had prior arrests and possibly prior convictions, through the testimony of these law enforcement officers constituted the introduction of prior bad act evidence by the Government against the Defendant, which is generally inadmissible.

23.     The Supreme Court established four guidelines for the admissibility of prior bad act evidence pursuant to the Federal Rules of Evidence: (1) the evidence must have a proper purpose under

Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its

prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only

for the limited purpose for which it is admitted. <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92,

108 S. Ct. 1496, 1502 (1988).

24.     Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith. It may,
> however, be admissible for other purposes, such as proof of motive, opportunity,
> intent, preparation, plan, knowledge, identity, or absence of mistake or accident,
> provided that upon request by the accused, the prosecution in a criminal case
> shall provide reasonable notice in advance of trial, or during trial if the court
> excuses pretrial notice on good cause shown, of the general nature of any such
> evidence it intends to introduce at trial.

25.     Any prior offenses, arrests or convictions suffered by the Defendant were not relevant

pursuant to Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity,

or absence of mistake or accident," regarding the six robberies for which the Defendant was on trial.

Rule 404(b), Federal Rules of Evidence.

26.     This evidence was also not relevant for any other purpose sanctioned by Rule 402 of the

Federal Rules of Evidence. And upon information and belief, the Government never provided

"reasonable notice in advance of trial" of its intent to introduce this bad act evidence.

27.     Therefore, this evidence was clearly inadmissible and prejudicial to the Defendant.

Assuming it had any probative value whatsoever, which it did not, its probative value was clearly

outweighed by its prejudicial effect. In the context of this case, the probative value of admitting this

other offense evidence was greatly outweighed by the prejudicial effect thereof, in that there was no

"genuine need" for the evidence. <u>United States v. Scarfo</u>, 850 F.2d 1015, 1019 (3d Cir. 1988).

28.     All the jury was required to learn was that a photograph of the Defendant was included in the photo arrays. There was no challenge by the Defendant regarding his identity in the photographs. Therefore, it was unnecessary for the Government to prove the source of the photos.

29.     Clearly, any implication that the Defendant had a prior arrest, a prior conviction or was serving a sentence was extremely prejudicial to the Defendant as a matter of law. Particularly in a case where the Defendant's alleged co-conspirators admitted to being involved in up to 20 robberies. (Exhibit "C," Tr. May 4, 2005, p. 66-67; testimony of alleged coconspirator Eric Jewell). The jury may have been led to believe that the Defendant's prior arrests and/or convictions involved some of the other robberies for which testimony was introduced during the course of the trial with respect to the alleged coconspirators of the Defendant.

30.     It is therefore clear that defense counsel's performance with regard to his failure to challenge this evidence fell below the standard of reasonableness, and that the Defendant was prejudiced as a matter of law. Strickland v. Washington, supra; Blystone v. Horn, 664 F.3d 397 (3d Cir. 2011). Therefore, a new trial is required on all counts.

B.     The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That Defense Counsel Presented Ineffective Opening and Closing Arguments to the Jury

31.     The inadequacy of a defense counsel's jury arguments can be the basis for a violation of the Sixth Amendment claim.  Smith v. Spisak, 558 U.S. 139, 151, 130 S.Ct. 676, 685 (2010).

32.     The essence of defense counsel's Sixth Amendment role in representing his or her client is to be an advocate for the client within the adversarial system, which helps to ensure a fair trial. A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and

knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled. Strickland, 466 U.S. at 685, 104 S.Ct. at 2063.

33.     A defendant is denied his right to a fair trial through ineffective assistance of counsel if defense counsel ceases to advocate for the defendant, and at times, in essence crosses the line and even joins the cause of the Government. Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55(1932); Strickland, 466 U.S. at 688, 104 S.Ct. at 2065.

34.     Defense counsel in his opening and in his closing arguments essentially ineffectively conceded the guilt of the Defendant.

35.     In the opening statement, while arguing the jurisdictional issue, defense counsel admitted that the Defendant had committed the crimes charged. (Exhibit "B," Tr. May 3, 2005, p. 29).

36.     In defense counsel's closing argument, he essentially argued to the jury that the Defendant confessed to the crimes with which he was charged when in state custody:

> You heard about it. We talked about it with these confessions, he was arrested and charged in State Court, he came in, confessed in State Court. This is exactly what was happening to him until Mitchell and Jewell  got picked up by the feds and said uh oh, uh oh, 710 years? Not good anymore.

(Exhibit "E," Tr. May 6, 2005, pp. 53-54). This position was contrary to that taken by the Defendant pretrial,  which was that the confession was inadmissible.[1]

37.     Then, the Government in rebuttal emphasized the same point made by defense counsel, being that the jury had the benefit of the Defendant's confession. (Exhibit "E," Tr. May 6, 2005, pp. 67-69).

---

[1] On September 29, 2003, the Defendant filed a Motion to Suppress the confession. (Document #40). A hearing on the matter was held on July 30, 2004. (Documents #82 and #92). The Court denied the Motion on August 31, 2004, which Order was docketed on September 2, 2004 (Document #106).

38.     In defense counsel's closing argument, he all but conceded that the Defendant was guilty. While he initially attacked the credibility of the two co-conspirators, during trial and during his closing argument, he also advised the jury during the same closing argument that he wasn't saying that the co-conspirators were totally without belief, but that they had merely embellished the role of the Defendant in these crimes.  (Exhibit "E," Tr. May 6, 2005, pp. 45-50). He thereby supported the credibility of the two co-conspirators confirming his client's guilt.

39.     During his jurisdictional argument, defense counsel also conceded the guilt of the Defendant by arguing that, were the jury to find the Defendant not guilty, they would not be saying that he is innocent of committing the robberies, but they would be saying send the case back to state court where it belongs. (Exhibit "E," Tr. May 6, 2005, pp. 55).

40.     Through this argument, consistent with his opening statement, defense counsel admitted the Defendant's guilt to the jury, but requested jury nullification which was completely contrary to the charge given by the Court, which was limited to determining whether or not the Government met its burden of proof.[2]

41.     Through this argument, defense counsel advised the jury that the Government had met its burden.

42.     In closing argument, competent defense counsel is required to request specific relief from the jury, i.e., a verdict of not guilty. Here, defense counsel completely failed to ask the jury for a verdict in favor of the Defendant, further implying his belief in the Defendant's guilt.

_____

[2] A defense attorney should never cross the line. Compare: <u>Buehl v. Vaughn</u>, 1996 U.S. Dist. LEXIS 19509, p. 107-120 (E.D. Pa., Padova, J.) (opening statement by defense counsel in a murder trial asserting that the perpetrator of the crime should be put to death, was deemed ineffective as undermining counsel's ability to advocate for the defendant at the penalty phase of the trial.).

The last thing I want to say to you is this: I thank you very much for your time. I spoke longer than I thought I would. Your deliberations are sacrosanct, okay? When you go through that door they are secret. They are private. Nobody, and I mean nobody, can inquire into what you guys say, why you reached the decision you reached, it's yours. Thank you very much.

(Exhibit "E," Tr. May 6, 2005, pp. 59).

43. The overall effect of trial counsel's closing argument was to communicate to the jury that they had no choice but to return a verdict of guilty against the Defendant.

44. To emphasize to the jury that the Defendant confessed to the crimes charged, is the role of the prosecution and there is no reasonable basis for defense counsel to emphasize this point, particularly when said confession was challenged pretrial. (Exhibit "E," Tr. May 6, 2005, pp. 53-54).

45. After attacking the credibility of the two co-conspirators, which could possibly raise a reasonable doubt among the jurors, defense counsel supported the credibility of the two co-conspirators by stating that he was not stating that they were totally without belief, but they engaged in embellishment regarding the Defendant's role, confirming his belief in his client's guilt. ((Exhibit "E," Tr. May 6, 2005, pp. 45-50). Competent counsel would have argued "False in One, False in All (*Falsus in Uno, Falsus in Omnibus*)." (Model Criminal Jury Instruction for the Court of Appeals for the Third Circuit §4.26).

46. Defense counsel also conceded the guilt of the Defendant by arguing that if the jury were to find the Defendant not guilty, they would not be saying that he is innocent. (Exhibit "E," Tr. May 6, 2005, pp. 55).

47. Most significant of all is the failure of defense counsel to advise the jury that they had a choice, that choice being to enter a verdict of not guilty in favor of the Defendant. (Exhibit "E," Tr. May 6, 2005, pp. 59). As such, the jury was left with one choice, that which was provided by the

Government. See: (Exhibit "E," Tr. May 6, 2005, p. 73) (Conclusion of the Government's rebuttal argument by Assistant United States Attorney Jeffery Whitt).

48.    The Defendant contends that defense counsel's admission of the Defendant's guilt in the opening argument, and trial counsel's overall closing argument was a concession of guilt leaving the Defendant without an advocate at two of the most critical stages of this adversarial system.

49.    As a result, the Defendant's Sixth Amendment right to effective assistance of counsel was denied. Prejudice must be presumed, as the Defendant's constitutional right to contest the Government's evidence was denied during the opening and closing arguments.

C.    The Defendant was Denied his Right to Effective Assistance of Counsel During the Plea Bargaining Process in Violation of the Sixth Amendment to the United States Constitution

50.    Defendants have a Sixth Amendment right to counsel, which right extends to the plea-bargaining process. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369 (1985). Thus, during plea negotiations defendants are "entitled to the effective assistance of competent counsel." McMann v. Richardson, 397 U. S. 759, 771, 90 S. Ct. 1441 (1970).

51.    During the course of pretrial proceedings in this matter, the Defendant was made aware that, if he went to trial and was convicted on all counts, he would be facing approximately 132 years in prison. As a result, the Defendant authorized then trial counsel, Christopher Warren, Esquire, to engage in plea bargaining with the Government.

52.    At some point, defense counsel, and even the Government directly, indicated to the Defendant that he could possibly receive a plea agreement offer whereby the Defendant would face approximately 32 years in prison as opposed to 132 years in prison. Admittedly, the Defendant,  then 26 years of age, was reluctant to accept 32 years in prison, and reach age 58 before he was released

from prison. However, merely being informed of a potential plea offer does not end the inquiry regarding effective assistance. <u>United States v. Day</u>, 969 F. 2d 39, 43-45 (3rd Cir 1992).

53.     A defendant has the right to make a reasonably informed decision whether to accept a plea offer. See <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369 (1985) (voluntariness of a guilty plea depends on adequacy of counsel's advice); <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 721, 68 S. Ct. 316, 322 (1948); <u>United States v. Day</u>, 969 F. 2d at 43.

54.     The Defendant contends here that he was denied the right to make a reasonably informed decision whether to accept a plea offer. Defense counsel's ineffective representation during plea negotiations is what led the Defendant to reject the potential plea offer, proceed to trial and receive a sentence of 132 years in prison.

55.     Even though the Defendant had indicated to his counsel that he was willing to consider entering into a plea agreement with the Government, at no time did trial counsel obtain a written plea offer from the Government for his consideration.

56.     On several occasions, defense counsel was asked by the Defendant to assess the chances of being victorious at trial based upon the evidence against the Defendant. In response, and on several occasions, defense counsel advised the Defendant that in his view, the robberies had no effect on interstate commerce, and therefore, there was no jurisdiction in federal court for either the robbery charges or for the gun charges.

57.     On these occasions, defense counsel advised the Defendant of the unfairness of prosecuting him in federal court, specifically naming other criminal defendants who the Government "permitted" to plead to local charges. Counsel advised the Defendant that he believed that there was a good chance that he could have the prosecution "sent back to state court" where the Defendant would be facing considerably less time in prison than if he were convicted in federal court. Defense counsel

echoed this advice to the Defendant in his plea to the jury, asking the jury to send the case back to state court. (Exhibit "E," Tr. May 6, 2005, pp. 55).

58.     In addition, upon information and belief, defense counsel never secured a firm offer from the Government to be presented to the Defendant for his consideration. Upon information and belief, as indicated above, defense counsel never secured a proposed written plea agreement to be considered by the Defendant.

59.     Further, defense counsel failed to share with the Defendant all of the relevant discovery provided to defense counsel prior to the actual trial. At the trial of this case, the Government introduced, inter alia, the Exhibits G-1 to G-41 as listed on Exhibit "F" attached hereto.

60.     Prior to trial, defense counsel only shared with the Defendant Exhibits G-23 (Upper Merion Township Police Photo Array), G-24 (Philadelphia Police Department Photo Array), G-36 (Philadelphia Police Department Photo Array-P. Lewis), G-37 (Philadelphia Police Department Photo Array-K. Smalls), G-38 (Jewel Plea Agreement), G.-39 (Michel Plea Agreement) and G-41 (report).

61.     Other than those exhibits, defense counsel failed to share the other discovery with the Defendant until trial. As a result, defense counsel clearly violated his duty "... to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065.

62.     As a result of defense counsel's failure to share with the Defendant critical discovery, the Defendant was hindered in his ability to fully evaluate the Government's case against him in determining whether or not to enter a plea of guilty pursuant to a plea bargain with the Government.

63.     Relying on his counsel's assessment of the case, that there was a clear opportunity for victory, the Defendant decided not to accept a potential plea offer of 32 years in prison, and to proceed to trial.

64.     At trial, defense counsel pursued an interstate commerce defense which was contrary to the clear state of the law. The record will also reflect that defense counsel knew that the interstate commerce defense that he was pursuing was contrary to the clear state of the law.[3]

65.     In <u>Lafler v. Cooper</u>, the Supreme Court concluded that defense counsel was ineffective when he advised the respondent to reject the plea offer on the grounds he could not be convicted at trial.

66.     At an evidentiary hearing, the Defendant will establish that defense counsel was ineffective in advising the Defendant during the plea bargaining process by:

     a.      failing to obtain from the Government a firm plea offer;

     b.      failing to obtain from the Government a proposed written plea agreement;

     c.      failing to share with the Defendant critical discovery prior to trial;

     d.      advising the Defendant that he could possibly defeat the Government's efforts to convict him beyond a reasonable doubt based on an interstate commerce defense; and that

     e.      the outcome of the plea process would have been different if he had received competent advice regarding plea negotiations pretrial.

67.     At a minimum, the Defendant hereby prays that the Court Orders as follows:

     a.      that an evidentiary hearing be held regarding this issue (see: <u>United States v. Perez</u>, 177 F.Supp. 2d 342 (E.D. Pa. 2001) (The Court granted an evidentiary hearing on the defendant's claim that his counsel failed to fully advise him as to the opportunities for plea bargaining, since there was no record of his conversations with counsel);

     b.      that judgment be vacated;

---

[3] Discussed more fully in Section IIID) below.

14

c. that plea negotiations between the Government and the Defendant proceed forthwith;

d. in the alternative, and at a minimum, that the Government be required to propose a plea offer in writing per discussions with trial counsel (<u>United States v. Day</u>, 969 F. 2d at 47; specific performance-the pretrial status quo).

D. The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That Defense Counsel Pursued a Jurisdictional Defense Which He Knew Was Contrary to the Law

68. Unreasonable tactical decisions may support a claim of ineffective assistance of counsel. <u>United States v. Williams</u>, 166 F.Supp. 2d 286, 292 (E.D. Pa 2001).

69. As noted in Section C above, defense counsel advised the Defendant that he believed he could have the case dismissed and transferred to state court based on a jurisdictional defense to all of the charges.

70. The defense theory proposed by defense counsel was that interstate commerce was not affected by any of the six robberies involved in the Indictment, since the robbers, by specific design, robbed each of the victim commercial establishments when there were no customers inside transacting business. In other words, that the Government was required to prove that commercial transactions with customers were interrupted in order to satisfy the jurisdictional element of effect upon interstate commerce.

71. Defense counsel proposed this defense to the jury during his opening statement. (Exhibit "B," Tr. May 3, 2005, pp. 24-30). Counsel argued that the robberies were planned at the end of the day when people would not be shopping or using the vendor services, which would negate an effect on interstate commerce.

15

72.     Defense counsel made the argument that the jury should send the case back to state court, which echoes the plan he outlined to the Defendant pretrial. (Exhibit "B," Tr. May 3, 2005, pp. 27-30).

73.     The Government questioned certain victim-witnesses to establish the interstate nexus, while Defense counsel consistently pursued this *no customer* defense during his cross-examination of victim-witnesses:

    a.    <u>Trial Day 2, May 3, 2005</u>

        (1)    Cross-examination of Jeffrey Stepp (Exhibit "B," Tr. May 3, 2005, pp. 57-60);

        (2)    Cross-examination of Neil Johnson (Exhibit "B," Tr. May 3, 2005, pp. 76-78);

        (3)    Cross-examination of James J. Pomante (Exhibit "B," Tr. May 3, 2005, pp. 92-95);

        (4)    Cross-examination of Rahman Warfield (Exhibit "B," Tr. May 3, 2005, pp. 107-110);

        (5)    Direct and Cross-examination of Robert Koons,

            Direct: (Exhibit "B," Tr. May 3, 2005, pp. 110-114);
            Cross:  (Exhibit "B," Tr. May 3, 2005, pp. 114-115);

        (6)    Cross-examination of Lisa Morasco (Exhibit "B," Tr. May 3, 2005, pp. 152-155);

        (7)    Direct and cross-examination of Tod McKenna

            Direct: (Exhibit "B," Tr. May 3, 2005, pp. 156-159);
            Cross: (Exhibit "B," Tr. May 3, 2005, pp. 159-160);

        (8)    Cross-examination of Pauletta Lewis (Exhibit "B," Tr. May 3, 2005, pp. 180-182);

        (9)    Cross-examination of Kenneth Smalls (Exhibit "B," Tr. May 3, 2005, pp. 198-200);

        (10)    Direct and Cross-examination of Guy Stuart

            Direct: (Exhibit "B," Tr. May 3, 2005, pp. 201-207);
            Cross:  (Exhibit "B," Tr. May 3, 2005, pp. 207-208);

(11) Cross-examination of Toby Daniel Parker (Exhibit "B," Tr. May 3, 2005, pp. 228-231);

(12) Cross-examination of Annie James Mincey (Exhibit "B," Tr. May 3, 2005, pp. 247-248);

(13) Direct and cross-examination of Dale Teruya

Direct: (Exhibit "B," Tr. May 3, 2005, pp. 249-255);
Cross: (Exhibit "B," Tr. May 3, 2005, pp. 255-259).

b. <u>Day 3, May 4, 2005</u>

(1) Cross-examination of Kenneth Sheridan (Exhibit "C," Tr. May 4, 2005, pp. 8-10);

(2) Cross-examination of Marlo Speed (Exhibit "C," Tr. May 4, 2005, pp. 23-24);

(3) Cross-examination of William Clothier (Exhibit "C," Tr. May 4, 2005, pp. 30-34)

(4) Direct and cross-examination of Angela Bock

Direct: (Exhibit "C," Tr. May 4, 2005, pp. 52-55);
Cross: (Exhibit "C," Tr. May 4, 2005, pp. 56-58);

(5) Eric Mitchell-co-conspirator

Direct: (Exhibit "C," Tr. May 4, 2005, pp. 167-204);
Cross: (Exhibit "C," Tr. May 4, 2005, pp. 204-223).

74. During his closing argument to the jury, defense counsel argued that if there were no customers in the store at the time of the robberies, the victims were not engaged in interstate commerce, and therefore, there was no federal jurisdiction. (Exhibit "E," Tr. May 6, 2005, pp. 55-59). Counsel knew that this was not a correct statement of the law.

75. During the charging conference, defense counsel conceded that the state of the law regarding an effect on interstate commerce in the Third Circuit was governed by <u>United States v. Urban</u>, 404 F3d 754 (3rd Cir. 2005). (Exhibit "D," Tr. May 5, 2005, p. 89). One of the essential holdings in that case was that where the resources of an interstate business are depleted or diminished

in any manner by a prohibited act such as robbery or extortion, the consequent impairment of ability to conduct an interstate business is sufficient to satisfy the interstate commerce jurisdictional requirement of the Hobbs Act. Id. at 763-764.

76. During conferences with the Court, including during the charge conference, defense counsel admitted that there was no support in the law for the jurisdictional defense he was pursuing on behalf of the Defendant. (Exhibit "D," Tr. May 5, 2005, pp. 70-71).

77. Defense counsel's jurisdictional defense prompted the Government in rebuttal to refer to it as "ridiculous" and "absurd." (Exhibit "E," Tr. May 6, 2005, pp. 64-65). It is not a far leap to conclude that the jury agreed.

78. Defense counsel imposed no objection to the jury charge proposed by the Court, which essentially rendered the defense presented during the trial a nullity, and failed to preserve any issue regarding the charge for appeal. (Exhibit "D," Tr. May 5, 2005, pp. 71-81); (Exhibit "E," Tr. May 6, 2005, p. 3).

79. Defense counsel failed to present to the Court any argument, alternative proposed charge or legal authority on the interstate commerce issue, which would support his defense theory, or establish a record from which an appellate court could possibly make new law.

80. As a result, defense counsel was ineffective in pursuing a jurisdictional defense which was contrary to the law, contrary to the charge of the Court to the jury, that was ridiculed by the Government and which had no factual or legal foundation upon which the jury could rest a verdict in favor of the Defendant. As a result, a new trial is required.

E.     The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That <u>Defense Counsel's Overall Performance Denied the Defendant a Fair Trial</u>

81.     As the Supreme Court stated in <u>Strickland</u>: "Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." <u>Id</u>., 466 U.S. at 688, 104 S.Ct. at 2065.

82.     The Defendant contends that defense counsel's overall performance as set forth in Sections IV(A), (B), (C) and (D) above, which are incorporated by reference herein, in combination, undermined the adversarial nature of the trial process such that the Defendant was denied a fair trial.

83.     In an effective assistance analysis, defense counsel is afforded great deference with regard to pursuing a legitimate trial strategy, about which there can be a difference of opinion. <u>Id</u>. at 689, 2065; <u>Michel v. Louisiana</u>, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955). However, the Defendant contends that there can be no legitimate trial strategy in failing to review all discovery with the Defendant prior to trial, in failing to object to irrelevant prejudicial other bad act evidence, in pursuing a defense without foundation in law and in failing to competently advocate for one's client during opening and closing argument.

84.     Trial counsel's ineffective assistance is reflected in every critical stage of his representation of the Defendant, being during pretrial plea negotiations, in the questioning of witnesses during trial, in failing to object to irrelevant prejudicial evidence, and even during arguments to the jury. As such, the Defendant has been denied his right to a fair trial guaranteed by the Sixth Amendment to the United States Constitution. <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2065.

85.     This Court may consider the cumulative effect of counsel's overall performance and the numerous errors cited herein to determine whether the <u>Strickland</u> standard has been met. See: <u>Buehl v. Vaughn</u>, 1996 U.S. Dist. LEXIS 19509, p. 73-74 (E.D. Pa., Padova, J.).

86.     The Defendant contends that the Strickland standard has been met, based upon trial counsel's overall performance, and that the Defendant is entitled to a new trial.

F.      The Defendant Was Denied His Sixth Amendment Right to Trial by Jury with Regard to the Finding of this Court That the Defendant Brandished a Firearm During the Commission of the Offense

87.     The Sixth Amendment provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt. United States v. Gaudin, 515 U. S. 506, 510, 115 S. Ct. 2310 (1995); In re Winship, 397 U. S. 358, 364, 90 S. Ct. 1068 (1970).

88.     The substance and scope of this right depend upon the proper designation of the facts that are elements of the crime. Alleyne v. United States, 133 S. Ct. 2151, 1256. (2013).

89.     It is now established that any fact that increases the prescribed statutory maximum sentence must be an "element" of the offense to be found by the jury. Apprendi v. New Jersey, 530 U. S. 466, at 483, n. 10; 120 S. Ct. 2348 (2000).

90.     In Alleyne v. United States, the Supreme Court of the United States found that the imposition of an increased penalty by the district court by judicial fact-finding as opposed to a finding by the jury violated the defendant's Six Amendment right to trial by jury. Id, at 2163-64.

91.     As noted above, Defendant Ezell was charged with six counts of using and carrying and aiding and abetting the using and carrying of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts 2, 5, 6, 8, 10 and 12).

92.     Title 18 U.S.C. § 924(c) in relevant part provides as follows:

(c) (1) (A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the

punishment provided for such crime of violence or drug trafficking crime--
(i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(C) In the case of a second or subsequent conviction under this subsection, the person shall--
(i) be sentenced to a term of imprisonment of not less than 25 years...

93.    Here, the Court sentenced the Defendant to a term of imprisonment of seven years on Count Two. The sentence of 7 years as opposed to 5 years was on the basis of judicial fact-finding that the Defendant brandished a firearm during the commission of the offense described in Count Two of the Indictment. (See Memorandum and Opinion of the Court of March 3, 2006, pp. 3-5).

94.    This finding by the Court was based on the argument of the Government that "the Court must sentence Mr. Ezell to seven years imprisonment on Count 2 because the trial evidence established that he brandished a firearm, or aided and abetted the brandishing of a firearm, in furtherance of the robbery underlying Count 2. (See Memorandum and Opinion of the Court of March 3, 2006, p. 2).

95.    The element of whether or not the Defendant brandished a firearm during the commission of the offense was not submitted to, nor determined by the jury.

96.    In making this decision, this Court appeared to reluctantly rely upon the decision of the United States Supreme Court in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406 (2002), which could not be reconciled with the Supreme Court's decision in Apprendi v. New Jersey. But this Court felt restrained to follow Harris because, at that time, Harris had not been specifically overruled by the Supreme Court. (See Memorandum and Opinion of the Court of March 3, 2006, pp. 4-5).

97.     In <u>Alleyne v. United States</u>, the Supreme Court specifically overruled <u>Harris</u> on this very issue. <u>Id</u>., 133 S. Ct. at 1255.[4]

98.     On the Authority of <u>Alleyne v. United States</u>, the imposition of a 7-year sentence on Count Two violated the Defendant's Sixth Amendment right to a trial by jury, requiring resentencing on Count Two.[5]

99.     This Motion is also supported by the attached Memorandum of Law in Support of Counsel's Amended 2255 Motion, which is attached hereto and incorporated by reference herein.

100.    The Defendant reserves the right to file a Supplemental Memorandum of Law, a proposed Order and Findings of Fact and Conclusions of Law for the Court's consideration.

---

[4] This claim could not have been made on direct review based on the state of the law at the time of the original appeal. See: <u>Bousley v. United States</u>, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998).

[5] The Defendant contends, pro se, that the United States Supreme Court's decision in <u>Alleyne v. United States</u> also applies to the successive 25 year sentences imposed pursuant to 18 U.S.C. § 924(c)(1)(C)(i). While counsel disagrees, counsel incorporates this argument by way of footnote to preserve the issue before the Court on behalf of the Defendant. The Defendant argues as follows: "Defense counsel Warren's performance at sentencing was deficient for failing to challenge the 25 year enhancements for Counts 4, 6, 8, 10 and 12 of the Indictment. Under 18 U.S.C. § 924 (C)(1)(A), and the jury verdict, my mandatory minimum sentence for counts 2, 4, 6, 8, 10 and 12 of the Indictment (which charged that I used or carry a firearm during a crime of violence) is five years on each count. That mandatory minimum was increased from five years to 25 years when the trial judge found there was a second or subsequent conviction under subsection 924 (C)(1)(c). In <u>Apprendi v. New Jersey</u>, 530 U. S. 466, 120 S. Ct. 2348, 147 L.Ed. 2d 435 (2000), and with the original meaning of the Sixth Amendment, any fact that, by law, increases the penalty for crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. If a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations, then those special circumstances must be specified in the indictment. The Indictment in my case fails to specify a 25-year enhancement under 18 U.S.C. § 924 (C)(1)(c), and the judge not the jury increased the punishment above what is otherwise legally proscribed under 18 U.S.C. § 924 (C)(1)(A). Because the jury form indicated that I was convicted of 18 U.S.C. § 924 (C)(1)(A), which carries a five-year mandatory minimum, all facts used to increase the five-year minimum are elements which should have been submitted to the jury."

WHEREFORE, for the reasons cited and in the interests of justice, Defendant Jamal Ezell respectfully prays that the Court grant this Motion pursuant to Title 28 U.S.C § 2255 and Order the relief requested above.

Respectfully submitted,

LUTHER E. WEAVER, III, ESQUIRE
Weaver & Associates, P.C.
14th Floor, 1525 Locust Street
Philadelphia, PA 19102-3732
(215) 790-0600
Attorneys for Defendant Jamal Ezell

Dated: September 17, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
                                :
          v.                 :       CRIMINAL NO. 02-815-01
                                :
JAMAL EZELL                 :

MEMORANDUM OF LAW IN SUPPORT OF COUNSEL'S AMENDED 2255 MOTION

I.     Procedural History

On December 17, 2002, a federal grand jury in the Eastern District of Pennsylvania

returned a 12-count Indictment charging Defendant Jamal Ezell with six counts of Hobbs Act robbery,

in violation of 18 U.S.C. § 1951 (Counts 1, 3, 5, 7, 9 and 11), six counts of using and carrying and

aiding and abetting the using and carrying of a firearm during a crime of violence, in violation of 18

U.S.C. §§ 924(c) and 2 (Counts 2, 5, 6, 8, 10 and 12). The charges arise out of six robberies in and

around Philadelphia, Upper Darby, and Upper Merion Township, Pennsylvania committed between

March 5, 2002 and March 20, 2002.

A four-day trial was held from May 2 to May 6, 2010. The trial transcripts are attached hereto

as Exhibit "A" (May 2, 2013); Exhibit "B" (May 3, 2013); Exhibit "C" (May 4, 2013); Exhibit "D"

(May 5, 2013) and Exhibit "E" (May 6, 2013).

On May 6, 2005, Mr. Ezell was found guilty by a jury on all counts of the Indictment.

On March 3, 2006, the Defendant was sentenced by the Court to serve a term of imprisonment

of 132 years (1584 months) and one day. The sentence was imposed as follows:

          •      Count(s) 1, 3, 5, 7, 9 and 11: imprisonment 1 day; supervised release 3 years;

restitution in the sum of $15,000.00; special assessment $1,200.00;

          •      Count 2: Imprisonment 84 Months, consecutive to Counts. 1, 3, 5, 7, 9 and 11;

supervised release 5 years; restitution in the sum of $15,000; special assessment of $1,200.00;

- Counts 4, 6, 8, 10, 12: imprisonment 300 months on each Count, to be served consecutively, and consecutive to Counts. 1, 2, 3, 5, 7, 9 and 11; supervised release 5 years; restitution in the sum of $15,000; special assessment $1,200.00. The judgment of the District Court was formally entered on March 7, 2006.

On February 19, 2008, the United States Court of Appeals for the Third Circuit affirmed the judgment of the District Court entered on March 7, 2006. This Order was formally entered in the docket of the District Court on March 12, 2008.

Following the direct appeal, the Defendant filed a number of pro se Motions in district court, including a pro se Motion pursuant to Title 28 U.S.C. § 2255 to, set aside and correct the sentence imposed by the Court on March 3, 2006.

On May 9, 2013, undersigned counsel was appointed to represent the Defendant with regard to the Defendant's pending pro se Motion pursuant to § 2255, and in all related proceedings.

II.     General Factual Background

Here the Defendant recites the general factual background regarding the Indictment and the trial evidence. More specific facts relating to the claims made herein are set forth below.

A.     The Offense Conduct

During a two-week period beginning on March 2, 2002, allegedly the Defendant and several others participated in the armed robbery of six different establishments in Philadelphia and Montgomery Counties. The pattern was essentially the same. Two or three men would enter the establishments when few or no customers were in the establishments, and upon entering, one of the three would display a firearm and announce the robbery. The victims were then bound with either duct tape or some other form of restraint, and money and sometimes merchandise was taken.

The first two robberies were committed on March 5, 2002 and the targets were a Wine and Spirits Shoppe located in King of Prussia, Pennsylvania (Count One) and an ABC Auto Parts store located in Upper Darby, Pennsylvania (Count Three). Both robberies were committed allegedly by the Defendant and admittedly by one Eric Mitchell and Eric Jewel. Counts One and Three also had corresponding § 924( c) charges which were set forth in Counts Two and Four.

Counts Five (§ 1951) and Six (§ 924( c)) were based upon the armed robbery of the Peoples Cleaners located in King of Prussia, Pennsylvania, on March 10, 2002. On that date, the Defendant allegedly entered the business and posed as a customer while Jewell and his cousin, Alphonso Holder, waited outside. Jewell and Holder thereafter followed the Defendant inside and one of those two men displayed a firearm at the lone employee who was working at that time. Money was then removed from the cash register and the employee was bound with duct tape. The robbers then left the cleaners and split the cash between them.

On March 12, 2002, another Wine and Spirits Shoppe that was located in Philadelphia, Pennsylvania was robbed allegedly by the Defendant and Jewell. According to the evidence, the two men entered the store shortly before closing and demanded money at gunpoint. The two employees working that night complied and money and merchandise were taken. The employees were then bound with duct tape and the two robbers fled the establishment. This robbery and a corresponding § 924(c) charge were set forth in Counts Seven and Eight respectively.

The next robbery occurred on March 15, 2002, and allegedly involved the Defendant, Mitchell, Jewell and a fourth individual named Angelo Hall. This time, the business was a Hooter's Restaurant located in Upper Merion Township, Pennsylvania. According to the evidence, the four men forced their way into the restaurant through a back door. Once inside, the four men displayed firearms and ordered the employees to move into a small office. The manager was then forced to open the safe and after he

complied, the robbers then removed the sum of $5,500.00 in money and the day's cash receipts. This robbery and the parallel § 924(c) charge were set forth in Counts Nine and Ten respectively.

The last robbery was committed on March 20, 2002 at a Pizzeria Uno in Philadelphia, Pennsylvania, and allegedly involved the Defendant, Jewell, and Mitchell. As was the case with the other offenses, this robbery was also committed through the use of firearms, and once inside the establishment, the men ordered the employees to go into an office where they were directed to lie on the floor and then were bound with duct tape. The robbers thereafter took roughly $3,000.00 from a safe and then fled the premises. Count Eleven set forth the robbery charge and the § 924(c) charge was the basis for Count Twelve.

B.     Defense Trial Strategy

The trial transcript reveals that the Defendant's only defense presented at trial was that the Court lacked jurisdiction to prosecute any of the offenses. Defense counsel argued and cross-examined witnesses pursuing the theory that there was an insufficient effect on interstate commerce with which to sustain federal jurisdiction, primarily because no customer transactions were being conducted when the robberies were in process.

To establish the element of an effect upon interstate commerce, the Government called witnesses related to each establishment that was robbed who generally testified that each of the stores and businesses obtained goods and services which were transported in interstate commerce.

The Government also called Jewell and Mitchell as witnesses and they described in detail the manner in which the robberies were committed and the Defendant's alleged role in each of the offenses. The Government also called several of the victim employees and they testified as to what occurred during each of the robberies and the fear that they experienced at the time the offenses were committed.

4

III.     Legal Principles

A.     Post-Conviction Relief

1.     Statutory Reference

Title 28 U.S.C § 2255, entitled "Federal custody; remedies on motion attacking sentence"

provides as follows in subsection 2255(a):

> (a) A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or that the sentence was
> in excess of the maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

2.     Requirement for an Evidentiary Hearing

Section 2255(b) limits the discretion of a district court to summarily dismiss a petition brought

under that Section. In relevant part, § 2255(b) provides:

> Unless the motion and the files and records of the case conclusively show that
> the prisoner is entitled to no relief, the court shall cause notice thereof to be
> served upon the United States attorney, grant a prompt hearing thereon,
> determine the issues and make findings of fact and conclusions of law with
> respect thereto.

See: United States v. Day, 969 F2d 39, 41 (3rd Cir. 1992).

When a motion is made under § 2255, the question of whether to order a hearing is committed

to the sound discretion of the district court. However, in exercising that discretion, the Court must

accept the truth of the movant's factual allegations, unless they are clearly frivolous on the basis of the

existing record. Further, the Court must order an evidentiary hearing to determine the facts unless the

motion and files and records of the case show conclusively that the movant is not entitled to relief.

United States v. Day, 969 F.2d at 41-42; Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). See

also Rule 4(b) of the Rules Governing  § 2255 Proceedings.

3.     <u>Relief Available</u>

The relief available under § 2255, as provided in § 2255(b), is broad as it includes: (1) vacating of the judgment; (2) discharging the prisoner; (3) or resentencing; (4) correcting the sentence; (5) or granting a new trial:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

B.     <u>Rights Guaranteed by the 6th Amendment to the United States Constitution</u>

1.     <u>Rights Guaranteed Generally</u>

The 6th Amendment to the United States Constitution provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

2.     <u>Trial by an Impartial Jury</u>

The Sixth Amendment provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt. <u>United States v. Gaudin</u>, 515 U. S. 506, 510, 115 S. Ct. 2310 (1995); <u>In re Winship</u>, 397 U. S. 358, 364, 90 S. Ct. 1068 (1970). The substance and scope of this right depend upon the proper designation of the facts that are elements of the crime. <u>Alleyne v. United States</u>, 133 S. Ct. 2151, 1256 (2013).

It is now established that any fact that increases the penalty for a crime must be an "element" of the offense to be found by the jury. Alleyne v. United States, at 1255; Apprendi v. New Jersey, 530 U. S. 466, at 483, n. 10; 120 S. Ct. 2348 (2000).

      3.      Assistance of Counsel

The right to assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution. This right has been deemed fundamental by the United States Supreme Court, and it cannot be denied to a defendant absent intentional and actual waiver. Johnson v. Zerbst, 304 U.S. 458, 462, 58 S. Ct. 1019 (1938).

The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled. Strickland v. Washington, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063 (1984); Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 276 (1942).

Just having a lawyer present at trial for the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair, Strickland v. Washington, 466 U.S. at 685, and "For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970); Strickland, 466 U.S. at 686, 104 S.Ct. at 2063-64.

In the Third Circuit, claims of ineffective assistance of counsel are evaluated using the two-pronged test set forth in Strickland v. Washington. To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency. Blystone v. Horn, 664 F.3d 397, 418 (3d Cir. 2011).

In establishing this two-part test, in Strickland v. Washington, United States Supreme Court laid down a simple yardstick for determining whether or not a defendant was denied effective assistance of counsel:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

Id., 466 U.S. at 686, 104 S.Ct. at 2064.

At noted above first, the petitioner must show that his lawyer's performance was deficient by identifying counsel's "acts or omissions" that were outside the bounds of "reasonable professional judgment." Strickland, 466 U.S. at 688, 690. The Court must decide whether the acts or omissions "were outside the wide range of professionally competent assistance." Id. at 690. The Court judges counsel's performance based on the case-specific facts, viewed as of "the time of counsel's conduct." Id. Under this first prong, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158 (1955) ).

Second, a petitioner must show "that the deficient performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial" with a reliable result. Id. at 687. A petitioner must therefore show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A

reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Id. at 669. Stated differently, there will be an award of relief if the petitioner affirmatively establishes the likelihood of an unreliable verdict. McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993).

Normally, claims that were never raised on direct appeal are considered barred from collateral review. However, because an ineffective assistance of counsel claim often relies on matters outside of the factual record on appeal, and the defendant is often represented on appeal by the same counsel as at trial, courts have held that "an ineffective assistance claim which was not raised on direct appeal is not deemed procedurally defaulted for purposes of habeas review." United States v. Garth, 188 F.3d 99, 107 n.11 (3d Cir. 1999) (citing United States v. DeRewal, 10 F.3d 100, 103 (3d Cir. 1993).

IV.   Argument

    A.    The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That Defense Counsel Failed to Object to Inadmissible Bad Act Evidence Which Established That the Defendant Had Prior Arrests And/or Convictions

Defense counsel's failure to object to inadmissible evidence can constitute ineffective assistance of counsel, if such failure to object falls below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. at 688, Broaster v. Houtzdale, 2011 U.S. Dist. LEXIS 86832, p. 12 (2011) (DuBois, J).

On May 5, 2005, day four of the trial, the Government called as a witness Detective Donald Beese of the Upper Darby Township Police Department. Detective Beese testified that he received information from the Abington Police Department that the Defendant, Jamal Ezell, may be a "third" suspect in the robbery of the ABC Auto Parts Store in Upper Darby, Pennsylvania, on March 5, 2002. Detective Beese was invited by the Government to testify regarding how he developed a photo spread to show to victims, which included the photo of the Defendant. On direct examination, the Government

developed evidence that the Defendant's photograph was in the Philadelphia Police Department database, implying that the Defendant had a prior police record. There was no objection to this testimony. (Exhibit "D," Tr. May 5, 2005, p. 16).

Further, the Government called Detective Robert Geary, a Philadelphia Police Detective who was involved in investigating the robbery of the Wine and Spirits Shop at 1100 S. Delaware Avenue. (Exhibit "D," Tr. May 5, 2005, pp. 22-23). Detective Geary read one of the alleged confessions of the Defendant, and he identified a photo spread shown to witnesses regarding the robbery of the Delaware Avenue Wine and Spirits Shop. (Exhibit "D," Tr. May 5, 2005, pp. 25-26). At this point, the jury had already heard the source of the photo.

Next the Government called Detective James Godby of the Upper Merion Township Police Department. (Exhibit "D," Tr. May 5, 2005, pp. 39-40). Detective Godby, under questioning by the Government, explained how photo spreads are developed. He explained that they are created from a database going back approximately 5 years which database includes anyone who was arrested in Pennsylvania. (Exhibit "D," Tr. May 5, 2005, p. 44). Godby further testified that a photo spread was developed regarding the Defendant using the same criminal database he described, thereby clearly advising the jury that the Defendant had suffered prior arrests, and possibly convictions, in Pennsylvania. (Exhibit "D," Tr. May 5, 2005, pp. 45-51). Godby further explained that he had a first name being *Jamal,* and that he searched all of the Jamals who were arrested in Pennsylvania from the same database. (Exhibit "D," Tr. May 5, 2005, pp. 46-47). The Detective further testified that after he was able to identify Jamal Ezell as a subject, he made arrangements to have Ezell brought in "from the Philadelphia Prison System."  There was no objection to any of this testimony, and no curative or limiting instruction was given. (Exhibit "D," Tr. May 5, 2005, p. 51).

It was not necessary to elicit the source of the photographs into evidence, which evidence clearly established in the minds of the jury that the Defendant suffered prior arrests, possibly prior convictions, and that he was then currently imprisoned. There was no objection to any of this testimony by defense counsel. In the absence of an objection, no limiting or curative instruction was requested of the Court.

Further, for some unknown reason on cross examination, defense counsel himself pointed out that the Defendant was in custody in Philadelphia when Detective Godby brought him into Montgomery County to face charges:

> Q.    Okay. And when you brought my client in, he was in custody in Philadelphia, wasn't he?
> A.    That's correct.
> Q.    You get your warrant, you bring him into Montgomery County, right?
> A.    Correct.

(Exhibit "D," Tr. May 5, 2005, p. 63).

The introduction of these facts, that the Defendant had prior arrests and possibly prior convictions, through the testimony of these law enforcement officers constituted the introduction of prior bad act evidence by the Government against the Defendant, which is generally inadmissible.

The Supreme Court established four guidelines for the admissibility of prior bad act evidence pursuant to the Federal Rules of Evidence: (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. Huddleston v. United States, 485 U.S. 681, 691-92, 108 S. Ct. 1496, 1502 (1988).

Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith. It may,
> however, be admissible for other purposes, such as proof of motive, opportunity,
> intent, preparation, plan, knowledge, identity, or absence of mistake or accident,
> provided that upon request by the accused, the prosecution in a criminal case
> shall provide reasonable notice in advance of trial, or during trial if the court
> excuses pretrial notice on good cause shown, of the general nature of any such
> evidence it intends to introduce at trial.

Any prior offenses, arrests or convictions suffered by the Defendant were not relevant pursuant

to Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake or accident," regarding the six robberies for which the Defendant was on trial. Rule 404(b),

Federal Rules of Evidence.

This evidence was also not relevant for any other purpose sanctioned by Rule 402 of the

Federal Rules of Evidence. And upon information and belief, the Government never provided

"reasonable notice in advance of trial" of its intent to introduce this bad act evidence. Therefore, this

evidence was clearly inadmissible and prejudicial to the Defendant. Assuming it had any probative

value whatsoever, which it did not, its probative value was clearly outweighed by its prejudicial effect.

In the context of this case, the probative value of admitting this other offense evidence was greatly

outweighed by the prejudicial effect thereof, in that there was no "genuine need" for the evidence.

United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988). All the jury was required to learn was that

a photograph of the Defendant was included in the photo arrays. There was no challenge by the

Defendant regarding his identity in the photographs. Therefore, it was unnecessary for the Government

to prove the source of the photos. Clearly, any implication that the Defendant had a prior arrest, a prior

conviction or was serving a sentence was extremely prejudicial to the Defendant as a matter of law.

Particularly in a case where the Defendant's alleged co-conspirators admitted to being involved in up to

20 robberies. (Exhibit "C," Tr. May 4, 2005, p. 66-67; testimony of alleged coconspirator Eric Jewell).

The jury may have been led to believe that the Defendant's prior arrests and/or convictions involved some of the other robberies for which testimony was introduced during the course of the trial with respect to the alleged co-conspirators of the Defendant.

Last month in United States v. Davis, --- F.3d ---, 2013 U.S. App. LEXIS 16527 (3d Cir. August 9, 2013), the Court of Appeals for the Third Circuit held that evidence of Davis' two prior convictions for simple possession of cocaine was not admissible at his trial for possession with intent to distribute cocaine under Federal Rule of Evidence 404(b). The Court held that the district court also erred on the fourth and final *Huddleston* prong - the cautionary instruction. The district court did not caution the jurors regarding the limited purpose for the evidence at the time the evidence was presented.

It is therefore clear that defense counsel's performance with regard to his failure to challenge this evidence fell below the standard of reasonableness, and that the Defendant was prejudiced as a matter of law. Strickland v. Washington; Blystone v. Horn, Therefore, a new trial is required on all counts.

B.    The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That Defense Counsel Presented Ineffective Opening and Closing Arguments to the Jury

The inadequacy of a defense counsel's jury arguments can be the basis for a violation of the Sixth Amendment claim.  Smith v. Spisak, 558 U.S. 139, 151, 130 S.Ct. 676, 685 (2010).  When deficiencies in a closing argument are found, a defendant must still meet the second part of the test by establishing a reasonable probability that, but for the deficient closing, the result of the proceeding would have been different. Id, 558 U.S. at 151; 130 S.Ct. at 685.

The essence of defense counsel's Sixth Amendment role in representing his or her client is to be an advocate for the client within the adversarial system, which helps to ensure a fair trial:

> Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled. Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 276 (1942); see Powell v. Alabama, supra, at 68-69.

Strickland, 466 U.S. at 685, 104 S.Ct. at 2063.

A defendant is denied his right to a fair trial through ineffective assistance of counsel if defense counsel ceases to advocate for the defendant, and at times, in essence crosses the line and even joins the cause of the Government:

> Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. See Cuyler v. Sullivan, supra, at 346. From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause ... Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. See Powell v. Alabama, 287 U.S., at 68-69.

Strickland, 466 U.S. at 688, 104 S.Ct. at 2065.

It is conceded that the Government presented a compelling case against the Defendant during the trial. However, during his opening statement, defense counsel emphasized that the proof presented by the Government had to convince the jury of the Defendant's guilt beyond a reasonable doubt. (Exhibit "B," Tr. May 3, 2005, p. 28). In spite of this admonition in his opening statement, and defense counsel in his opening and in his closing arguments essentially ineffectively conceded the guilt of the Defendant.

In the opening statement, while arguing the jurisdictional issue, defense counsel admitted that the Defendant had committed the crimes charged. (Exhibit "B," Tr. May 3, 2005, p. 29).

In defense counsel's closing argument, he essentially argued to the jury that the Defendant confessed to the crimes with which he was charged when in state custody:

14

You heard about it. We talked about it with these confessions, he was arrested and charged in State Court, he came in, confessed in State Court. This is exactly what was happening to him until Mitchell and Jewell got picked up by the feds and said uh oh, uh oh, 710 years? Not good anymore.

(Exhibit "E," Tr. May 6, 2005, pp. 53-54). This position was contrary to that taken by the Defendant pretrial, which was that the confession was inadmissible.[1]

Then, the Government in rebuttal emphasized the same point made by defense counsel, being that the jury had the benefit of the Defendant's confession. (Exhibit "E," Tr. May 6, 2005, pp. 67-69).

In defense counsel's closing argument, he all but conceded that the Defendant was guilty. While he initially attacked the credibility of the two co-conspirators, during trial and during his closing argument, he also advised the jury during the same closing argument that he wasn't saying that the co-conspirators were totally without belief, but that they had merely embellished the role of the Defendant in these crimes. (Exhibit "E," Tr. May 6, 2005, pp. 45-50). He thereby supported the credibility of the two co-conspirators confirming his client's guilt.

During his argument involving jurisdiction, i.e., interstate commerce, Defense counsel also conceded the guilt of the Defendant by arguing that, were the jury to find the Defendant not guilty, they would not be saying that he is innocent of committing the robberies, but they would be saying send the case back to state court where it belongs:

> ... but what would you be saying by that verdict? Here is what you're saying, folks, it wasn't a federal crime. Send it back to the State Court where it belongs. Are you saying that's an innocent man, please go home ? No, you're saying it's not a Federal crime.

(Exhibit "E," Tr. May 6, 2005, pp. 55).

---

[1] On September 29, 2003, the Defendant filed a Motion to Suppress the confession. (Document #40). A hearing on the matter was held on July 30, 2004. (Documents #82 and #92). The Court denied the Motion on August 31, 2004, which Order was docketed on September 2, 2004 (Document #106).

Through this argument, consistent with his opening statement, defense counsel admitted the Defendant's guilt to the jury, but requested jury nullification which was completely contrary to the charge given by the Court, which was limited to determining whether or not the Government met its burden of proof.[2]  Through this argument, defense counsel advised the jury that the Government had met its burden of proof.

In closing argument, competent defense counsel is required to request specific relief from the jury, i.e., a verdict of not guilty. Here, defense counsel completely failed to ask the jury for a verdict in favor of the Defendant, further implying his belief in the Defendant's guilt.

> The last thing I want to say to you is this: I thank you very much for your time. I spoke longer than I thought I would. Your deliberations are sacrosanct, okay? When you go through that door they are secret. They are private. Nobody, and I mean nobody, can inquire into what you guys say, why you reached the decision you reached, it's yours. Thank you very much.

(Exhibit "E," Tr. May 6, 2005, pp. 59).

It may be a rare circumstance when a defense counsel's closing argument is so ineffective that a defendant can meet the test of establishing that the result of the trial may have been different if a competent closing had been given. But such is the case here.

The overall effect of trial counsel's closing argument was to communicate to the jury that they had no choice but to return a verdict of guilty against the Defendant:

• to emphasize to the jury that the Defendant confessed to the crimes charged, is the role of the prosecution and there is no reasonable basis for defense counsel to emphasize this point, particularly when said confession was challenged pretrial. (Exhibit "E," Tr. May 6, 2005, pp. 53-54).

---

[2] A defense attorney should never cross the line. Compare: <u>Buehl v. Vaughn</u>, 1996 U.S. Dist. LEXIS 19509, p. 107-120 (E.D. Pa., Padova, J.) (opening statement by defense counsel in a murder trial asserting that the perpetrator of the crime should be put to death, was deemed ineffective as undermining counsel's ability to advocate for the defendant at the penalty phase of the trial.).

- after attacking the credibility of the two co-conspirators, which could possibly raise a reasonable doubt among the jurors, defense counsel supported the credibility of the two co-conspirators by stating that he was not stating that they were totally without belief, but they engaged in embellishment regarding the Defendant's role, confirming his belief in his client's guilt. (Exhibit "E," Tr. May 6, 2005, pp. 45-50). Competent counsel would have argued "False in One, False in All (*Falsus in Uno, Falsus in Omnibus*)." (Model Criminal Jury Instruction for the Court of Appeals for the Third Circuit §4.26).

- Defense counsel also conceded the guilt of the Defendant by arguing that if the jury were to find the Defendant not guilty, they would not be saying that he is innocent. (Exhibit "E," Tr. May 6, 2005, pp. 55).

- most significant of all is the failure of defense counsel to advise the jury that they had a choice, that choice being to enter a verdict of not guilty in favor of the Defendant. (Exhibit "E," Tr. May 6, 2005, pp. 59). As such, the jury was left with one choice, that which was provided by the Government:

> And when you look at all the evidence in this case then I trust that you'll be able to return from your deliberations with a verdict of guilty on each and every count charged, six acts of Hobbs Act robbery as supported by the evidence in this case and six counts of using and carrying a firearm in aiding and abetting both of those offenses as charged against this Defendant, Jamal Ezell. Thank you very much.

(Exhibit "E," Tr. May 6, 2005, p. 73) (Conclusion of the Government's rebuttal argument by Assistant United States Attorney Jeffery Whitt).

The Defendant contends that defense counsel's admission of the Defendant's guilt in the opening argument, and trial counsel's overall closing argument was a concession of guilt leaving the Defendant without an advocate at two of the most critical stages of this adversarial system. As a result,

his Sixth Amendment right to effective assistance of counsel was denied. Prejudice must be presumed, as the Defendant's constitutional right to contest the Government's evidence was denied during the opening and closing arguments.

C.     The Defendant Was Denied His Right to Effective Assistance of Counsel During the Plea Bargaining Process in Violation of the Sixth Amendment to the United States Constitution

Defendants have a Sixth Amendment right to counsel, which right extends to the plea-bargaining process. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369 (1985). Thus, during plea negotiations defendants are "entitled to the effective assistance of competent counsel." McMann v. Richardson, 397 U. S. 759, 771, 90 S. Ct. 1441 (1970).

During the course of pretrial proceedings in this matter, the Defendant was made aware that, if he went to trial and was convicted on all counts, he would be facing approximately 132 years in prison as a result of the nature of the charges and the applicable mandatory minimum sentences. As a result, the Defendant authorized then trial counsel, Christopher Warren, Esquire, to engage in plea bargaining with the Government in order to resolve this case in a non-trial disposition, so that the Defendant faced considerably less time than 132 years if convicted.

At some point, defense counsel, and even the Government directly, indicated to the Defendant that he could possibly receive a plea agreement offer whereby the Defendant would face approximately 32 years in prison as opposed to 132 years in prison. Admittedly, the Defendant, then 26 years of age, was reluctant to accept 32 years in prison, and reach age 58 before he was released from prison. However, merely being informed of a potential plea offer does not end the inquiry regarding effective assistance:

> Although in this case Day concedes that he was notified of the terms of the plea
> bargain, he alleges that the advice that he received was so incorrect and so

> insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer. That, we hold, also states a Sixth Amendment claim.

United States v. Day, 969 F. 2d 39, 43-45 (3rd Cir 1992). A defendant has the right to make a reasonably informed decision whether to accept a plea offer. See Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S. Ct. 316, 322 (1948); United States v. Day, 969 F. 2d at 43.

The Defendant contends here that he was denied the right to make a reasonably informed decision whether to accept a plea offer. Defense counsel's ineffective representation during plea negotiations is what led the Defendant to reject the potential plea offer, proceed to trial and receive a sentence of 132 years in prison.

Even though the Defendant had indicated to his counsel that he was willing to consider entering into a plea agreement with the Government, at no time did trial counsel obtain a written plea offer from the Government for his consideration. On the contrary, on several occasions, defense counsel was asked by the Defendant to assess the chances of being victorious at trial based upon the evidence against the Defendant. In response, and on several occasions, defense counsel advised the Defendant that in his view, the robberies had no effect on interstate commerce, and therefore, there was no jurisdiction in federal court for either the robbery charges or for the gun charges. Defense counsel advised the Defendant of the unfairness of prosecuting him in federal court, specifically naming other criminal defendants who the Government "permitted" to plead to local charges. Counsel advised the Defendant that he believed that there was a good chance that he could have the prosecution "sent back to state court" where the Defendant would be facing considerably less time in prison than if he were convicted in federal court. Defense counsel presented this plea to the jury, asking the jury to send the case back to state court.

> ... but what would you be saying by that verdict? Here is what you're
> saying, folks, it wasn't a federal crime. <u>Send it back to the State Court
> where it belongs</u> ... No, you're saying it's not a Federal crime.

(Exhibit "E," Tr. May 6, 2005, pp. 55).

In addition, upon information and belief, defense counsel never secured a firm offer from the Government to be presented to the Defendant for his consideration. Upon information and belief, as indicated above, defense counsel never secured a proposed written plea agreement to be considered by the Defendant.

Further, defense counsel failed to share with the Defendant all of the relevant discovery provided to defense counsel prior to the actual trial. At the trial of this case, the Government introduced, inter alia, the Exhibits G-1 to G-41 as listed on Exhibit "F" attached hereto. Prior to trial, defense counsel only shared with the Defendant Exhibits G-23 (Upper Merion Township Police Photo Array), G-24 (Philadelphia Police Department Photo Array), G-36 (Philadelphia Police Department Photo Array-P. Lewis), G-37 (Philadelphia Police Department Photo Array-K. Smalls), G-38 (Jewel Plea Agreement), G.-39 (Michel Plea Agreement) and G-41 (report). Other than those exhibits, defense counsel failed to share the other discovery with the Defendant until trial. Included among the exhibits not shared with the Defendant until trial were numerous photographs actually depicting the robbers and the subject crimes in progress. Defense counsel clearly violated his duty "... to consult with the Defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2065.

As a result of defense counsel's failure to share with the Defendant critical discovery, the Defendant was hindered in his ability to fully evaluate the Government's case against him in determining whether or not to enter a plea of guilty pursuant to a plea bargain with the Government.

Relying on his counsel's assessment of the case, that there was a clear opportunity for victory, the Defendant decided not to accept a potential plea offer of 32 years in prison, and to proceed to trial.

At trial, defense counsel pursued an interstate commerce defense which was contrary to the clear state of the law. The record will also reflect that defense counsel knew that the interstate commerce defense that he was pursuing was contrary to the clear state of the law.[3]

In <u>Lafler v. Cooper</u>, the Supreme Court concluded that defense counsel was ineffective when he advised the respondent to reject the plea offer on the grounds he could not be convicted at trial. The question for the Court however was how to apply <u>Strickland's</u> prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial:

> To establish Strickland prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.

<u>Id.</u>, at 1384.

At an evidentiary hearing, the Defendant will establish that defense counsel was ineffective in advising the Defendant during the plea bargaining process by:

1.    failing to obtain from the Government a firm plea offer;

2.    failing to obtain from the Government a proposed written plea agreement;

3.    failing to share with the Defendant critical discovery prior to trial;

4.    advising the Defendant that he could defeat the Government's efforts to convict him beyond a reasonable doubt based on an interstate commerce defense; and that

5.    the outcome of the plea process would have been different if he had received competent advice regarding plea negotiations pretrial.

---

[3] Discussed more fully in Section IV(D) below.

Here, as in <u>Lafler v. Cooper</u>:

> Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Id</u> at 1384-1385.[4] Such a showing will be made by the Defendant in this case.

At a minimum, the Defendant hereby prays that the Court Orders as follows:

1.      that an evidentiary hearing be held regarding this issue (See: <u>United States v. Perez</u>, 177 F.Supp. 2d 342 (E.D. Pa. 2001)(The Court granted an evidentiary hearing on defendant's claim that his counsel failed to fully advise him as to the opportunities for plea bargaining, since there was no record of his conversations with counsel);

2.      that judgment be vacated;

3.      that plea negotiations between the Government and the Defendant proceed forth with;

4.      in the alternative, and at a minimum, that the Government be required to propose a plea offer in writing per discussions with trial counsel (<u>United States v. Day</u>, 969 F. 2d at 47; specific performance-the pretrial status quo).

---

[4] On several occasions the Court of Appeals for the Third Circuit rejected the position that being forced to stand trial cannot constitute prejudice. <u>United States v. Day</u>, 969 F. 2d 39, 44 (3rd Cir 1992); <u>United States ex rel. Caruso v. Zelinsky</u>, 689 F. 2d 435, 438 (3rd Cir 1982).

D.      The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That Defense Counsel Pursued a Jurisdictional Defense Which He Knew Was Contrary to the Law

As noted above, a defendant must show both that: (1) his counsel's conduct was deficient and "fell outside the wide range of professionally competent assistance" and (2) the defendant was prejudiced as a result of that deficient conduct. Strickland, 466 U.S. at 687; United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993), cert. denied, 511 U.S. 1033, 114 S. Ct. 1544 (1994). Unreasonable tactical decisions may support a claim of ineffective assistance of counsel. United States v. Williams, 166 F.Supp. 2d 286, 292 (E.D. Pa 2001).

As noted in Section C above, defense counsel advised the Defendant that he believed he could have the case dismissed and transferred to state court based on a jurisdictional defense to all of the charges. The defense theory proposed by defense counsel was that interstate commerce was not affected by any of the six robberies involved in the Indictment. The basis for this defense was that the robbers, by specific design, robbed each of the victim commercial establishments when there were no customers inside transacting business. In other words, that the Government was required to prove that commercial transactions with customers were interrupted in order to satisfy the jurisdictional element of effect upon interstate commerce.

Defense counsel proposed this defense to the jury during his opening statement. (Exhibit "B," Tr. May 3, 2005, pp. 24-30). Counsel argued that the robberies were planned at the end of the day when people would not be shopping or using the vendor services, which would negate an effect on interstate commerce. Indeed, he made the argument that the jury should send the case back to state court, which echoes the plan he outlined to the Defendant pretrial. ((Exhibit "B," Tr. May 3, 2005, pp. 27-30).

The Government questioned certain victim-witnesses to establish the interstate nexus, while Defense counsel consistently pursued this *no customer* defense during his cross-examination of victim-witnesses:

<u>Trial Day 2, May 3, 2005</u>

1.    Cross examination of Jeffrey Stepp (Exhibit "B," Tr. May 3, 2005, pp. 57-60);

2.    Cross examination of Neil Johnson (Exhibit "B," Tr. May 3, 2005, pp. 76-78);

3.    Cross-examination of James J. Pomante (Exhibit "B," Tr. May 3, 2005, pp. 92-95);

4.    Cross-examination of Rahman Warfield (Exhibit "B," Tr. May 3, 2005, pp. 107-110);

5.    Direct and Cross-examination of Robert Koons,

        Direct: (Exhibit "B," Tr. May 3, 2005, pp. 110-114);
        Cross:  (Exhibit "B," Tr. May 3, 2005, pp. 114-115);

6.    Cross-examination of Lisa Morasco (Exhibit "B," Tr. May 3, 2005, pp. 152-155);

7.    Direct and cross-examination of Tod McKenna

        Direct: (Exhibit "B," Tr. May 3, 2005, pp. 156-159);
        Cross: (Exhibit "B," Tr. May 3, 2005, pp. 159-160);

8.    Cross-examination of Pauletta Lewis (Exhibit "B," Tr. May 3, 2005, pp. 180-182);

9.    Cross-examination of Kenneth Smalls (Exhibit "B," Tr. May 3, 2005, pp. 198-200);

10.   Direct and Cross-examination of Guy Stuart

        Direct: (Exhibit "B," Tr. May 3, 2005, pp. 201-207);
        Cross:  (Exhibit "B," Tr. May 3, 2005, pp. 207-208);

11.   Cross-examination of Toby Daniel Parker (Exhibit "B," Tr. May 3, 2005, pp. 228-231);

12.   Cross-examination of Annie James Mincey (Exhibit "B," Tr. May 3, 2005, pp. 247-248);

13.   Direct and cross-examination of Dale Teruya

        Direct: (Exhibit "B," Tr.  May 3, 2005, pp. 249-255);
        Cross:  (Exhibit "B," Tr. May 3, 2005, pp. 255-259).

1.      Cross-examination of Kenneth Sheridan (Exhibit "C," Tr. May 4, 2005, pp. 8-10);

2.      Cross-examination of Marlo Speed (Exhibit "C," Tr. May 4, 2005, pp. 23-24);

3.      Cross-examination of William Clothier (Exhibit "C," Tr. May 4, 2005, pp. 30-34)

4.      Direct and cross-examination of Angela Bock

      Direct: (Exhibit "C," Tr. May 4, 2005, pp. 52-55);
      Cross:  (Exhibit "C," Tr. May 4, 2005, pp. 56-58);

5.      Eric Mitchell-co-conspirator

      Direct: (Exhibit "C," Tr. May 4, 2005, pp. 167-204);
      Cross: (Exhibit "C," Tr. May 4, 2005, pp. 204-223).

During his closing argument to the jury, defense counsel argued that if there were no customers in the store at the time of the robberies, the victims were not engaged in interstate commerce, and therefore, there was no federal jurisdiction. (Exhibit "E," Tr. May 6, 2005, pp. 55-59). Counsel knew that this was not a correct statement of the law.

During the charging conference, defense counsel conceded that the state of the law regarding an effect on interstate commerce in the Third Circuit was governed by United States v. Urban, 404 F3d 754 (3rd Cir. 2005). (Exhibit "D," Tr. May 5, 2005, p. 89). One of the essential holdings in that case was that where the resources of an interstate business are depleted or diminished in any manner by a prohibited act such as robbery or extortion, the consequent impairment of ability to conduct an interstate business is sufficient to satisfy the interstate commerce jurisdictional requirement of the Hobbs Act:

> We continued that "all that is required to bring an extortion within the statute is proof of a reasonably probable effect on commerce, however minimal, as result of the extortion." *Id.* (citations omitted). As in *Mazzei*, we found that the government's proof of depletion of assets of entities who purchased goods in interstate commerce satisfied this standard. *Id.*

<u>Id</u>. at 763-764.

During conferences with the Court, including during the charge conference, defense counsel admitted that there was no support in the law for the jurisdictional defense he was pursuing on behalf of the Defendant. (Exhibit "D," Tr. May 5, 2005, pp. 70-71).

Defense counsel's jurisdictional defense prompted the Government in rebuttal to refer to it as "ridiculous" and "absurd." (Exhibit "E," Tr. May 6, 2005, pp. 64-65). It is not a far leap to conclude that the jury agreed.

Defense counsel imposed no objection to the jury charge proposed by the Court, which essentially rendered the defense presented during the trial a nullity, and failed to preserve any issue regarding the charge for appeal. (Exhibit "D," Tr. May 5, 2005, pp. 71-81); (Exhibit "E," Tr. May 6, 2005, p. 3).

Defense counsel failed to present to the Court any argument, alternative proposed charge or legal authority on the interstate commerce issue, which would support his defense theory, or establish a record by which an appellate court could possibly make new law.

As a result, defense counsel was ineffective in pursuing a jurisdictional defense which was contrary to the law, contrary to the charge of the Court to the jury, that was ridiculed by the Government and which had no factual or legal foundation upon which the jury could rest a verdict in favor of the Defendant. As a result, a new trial is required.

     E.     The Defendant Was Denied His Right to Effective Assistance of Counsel During the Trial in Violation of the Sixth Amendment to the United States Constitution in That <u>Defense Counsel's Overall Performance Denied the Defendant a Fair Trial</u>

As the Supreme Court stated in <u>Strickland</u>: "Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." <u>Id</u>., 466 U.S. at 688, 104 S.Ct. at 2065. The Defendant contends that defense counsel's overall performance as set forth in

Sections IV(A), (B), (C) and (D) above, which are incorporated by reference herein, in combination, undermined the adversarial nature of the trial process such that the Defendant was denied a fair trial.

In an effective assistance analysis, defense counsel is afforded great deference with regard to pursuing a legitimate trial strategy, about which there can be a difference of opinion. Id. at 689, 2065; Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955). However, the Defendant contends that there can be no legitimate trial strategy in failing to review all discovery with the Defendant prior to trial, in failing to object to irrelevant prejudicial other bad act evidence, in pursuing a defense without foundation in law and in failing to competently advocate for one's client during opening and closing argument. Counsel's ineffective assistance is reflected in every critical stage of his representation of the Defendant, in the pretrial plea negotiations, in the questioning of witnesses during trial, in failing to object to irrelevant prejudicial evidence, and even during arguments to the jury. As such, the defendant has been denied his right to a fair trial guaranteed by the Sixth Amendment to the United States Constitution:

> Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

Strickland, 466 U.S. at 688, 104 S.Ct. at 2065.

This Court may consider the cumulative effect of counsel's overall performance and the numerous errors cited herein to determine whether the Strickland standard has been met. See: Buehl v. Vaughn, 1996 U.S. Dist. LEXIS 19509, p. 73-74 (E.D. Pa., Padova, J.).

The Defendant contends that the Strickland standard has been met, based upon trial counsel's overall performance, and that the Defendant is entitled to a new trial.

F. **The Defendant was Denied his Sixth Amendment Right to Trial by Jury with regard to the Finding of this Court that the Defendant brandished a Firearm during the Commission of the Offense**

The Sixth Amendment provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt. United States v. Gaudin, 515 U. S. 506, 510, 115 S. Ct. 2310 (1995); In re Winship, 397 U. S. 358, 364, 90 S. Ct. 1068 (1970). The substance and scope of this right depend upon the proper designation of the facts that are elements of the crime. Alleyne v. United States, 133 S. Ct. 2151, 1256. (2013).

It is now established that any fact that increases the prescribed statutory maximum sentence must be an "element" of the offense to be found by the jury. Apprendi v. New Jersey, 530 U. S. 466, at 483, n. 10; 120 S. Ct. 2348 (2000). In Apprendi v. New Jersey, the Supreme Court of the United States found that Apprendi's sentence had been unconstitutionally enhanced by the judge's finding of racial bias by a preponderance of evidence. Id., at 491-492, 120 S. Ct. 2348.

In Alleyne v. United States, the Supreme Court of the United States found that the imposition of an increased penalty by the district court by judicial fact-finding as opposed to a finding by the jury violated the defendant's Six Amendment right to trial by jury:

> Here, the sentencing range supported by the jury's verdict was five years' imprisonment to life. The District Court imposed the 7-year mandatory minimum sentence based on its finding by a preponderance of evidence that the firearm was "brandished." Because the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. The judge, rather than the jury, found brandishing, thus violating petitioner's Sixth Amendment rights. Accordingly, we vacate the Fourth Circuit's judgment with respect to Alleyne's sentence on the §924(c)(1)(A) conviction and remand the case for resentencing consistent with the jury's verdict.

Id., at 2163-64.

As noted above, Defendant Ezell was charged with six counts of using and carrying and aiding and abetting the using and carrying of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts 2, 5, 6, 8, 10 and 12). Title 18 U.S.C. § 924(c) in relevant part provides as follows:

> (c) (1) (A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
> (i) be sentenced to a term of imprisonment of not less than 5 years;
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> (C) In the case of a second or subsequent conviction under this subsection, the person shall--
> (i) be sentenced to a term of imprisonment of not less than 25 years...

Here, the Court sentenced the Defendant to a term of imprisonment of 7 years on Count Two. The sentence of 7 years as opposed to 5 years was on the basis of judicial fact-finding that the Defendant brandished a firearm during the commission of the offense described in Count Two of the Indictment. (See Memorandum and Opinion of the Court of March 3, 2006, pp. 3-5). This finding by the Court was based on the argument of the Government that "the Court must sentence Mr. Ezell to seven years imprisonment on Count 2 because the trial evidence established that he brandished a firearm, or aided and abetted the brandishing of a firearm, in furtherance of the robbery underlying Count 2." (See Memorandum and Opinion of the Court of March 3, 2006, p. 2). It is therefore undisputed that the element of whether or not the Defendant brandished a firearm during the commission of the offense was not submitted to, nor determined by the jury.

In making this decision, this Court appeared to reluctantly rely upon the decision of the United States Supreme Court in <u>Harris v. United States</u>, 536 U.S. 545, 122 S.Ct. 2406 (2002), which could not

be reconciled with the Supreme Court's decision in <u>Apprendi v. New Jersey</u>. But this Court felt

restrained to follow <u>Harris</u> because, at that time, <u>Harris</u> had not been specifically overruled by the

Supreme Court:

> This Court concludes that, although the reasoning of <u>Harris v. United States</u>, 536
> U.S. 545 (2002), has been undermined by <u>Booker</u> and <u>Blakely</u>, it is not the role
> of this Court to overrule a decision of the Supreme Court, or even to anticipate
> such an overruling by the Supreme Court.  Accordingly, this Court imposes
> sentence on Count two in reliance on the <u>Harris</u> case.

(See Memorandum and Opinion of the Court of March 3, 2006, pp. 4-5).

In <u>Alleyne v. United States</u>, the Supreme Court specifically over ruled <u>Harris</u> on this very issue:

> Harris drew a distinction between facts that increase the statutory
> maximum and facts that increase only the mandatory minimum. We conclude
> that this distinction is inconsistent with our decision in Apprendi v. New Jersey,
> 530 U. S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and with the original
> meaning of the Sixth Amendment. Any fact that, by law, increases the penalty
> for a crime is an "element" that must be submitted to the jury and found beyond
> a reasonable doubt. See id., at 483, n. 10, 490, 120 S. Ct. 2348, 147 L. Ed. 2d
> 435. Mandatory minimum sentences increase the penalty for a crime. It follows,
> then, that any fact that increases the mandatory minimum is an "element" that
> must be submitted to the jury. Accordingly, Harris is overruled.

<u>Id</u>., 133 S. Ct. at 1255.[5]

On the Authority of <u>Alleyne v. United States</u>, the imposition of a 7-year sentence on Count Two

violated the Defendant's Sixth Amendment right to a trial by jury, requiring resentencing on Count

Two.[6]

---

[5] This claim could not have been made on direct review based on the state of the law at the time
of the original appeal. See: <u>Bousley v. United States</u>, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998).

[6] The Defendant contends, pro se, that the United States Supreme Court's decision in <u>Alleyne v.
United States</u> also applies to the successive 25 year sentences imposed pursuant to 18 U.S.C. §
924(c)(1)(C)(i). While counsel disagrees, counsel incorporates this argument by way of footnote to
preserve the issue before the Court on behalf of the Defendant. The Defendant argues as follows:
"Defense counsel Warren's performance at sentencing was deficient for failing to challenge the 25 year
enhancements for Counts 4, 6, 8, 10 and 12 of the Indictment. Under 18 U.S.C. § 924 (C)(1)(A), and
the jury verdict, my mandatory minimum sentence for counts 2, 4, 6, 8, 10 and 12 of the Indictment

## V.     Conclusion

For the reasons cited and in the interest of justice, Defendant Jamal Ezell respectfully contends that judgment on all counts of the Indictment must be vacated and relief granted as requested in the Defendant's Amended § 2255 Motion.

The Defendant reserves the right to file a Supplemental Memorandum of Law and Findings of Fact and Conclusions of Law for the Court's consideration.

<div style="margin-left:40%">

Respectfully submitted,

_____
LUTHER E. WEAVER, III, ESQUIRE
Weaver & Associates, P.C.
14th Floor, 1525 Locust Street
Philadelphia, PA 19102-3732
(215) 790-0600
Attorneys for Defendant Jamal Ezell

</div>

Dated: September 17, 2013

---

(which charged that I used or carry a firearm during a crime of violence) is five years on each count. That mandatory minimum was increased from five years to 25 years when the trial judge found there was a second or subsequent conviction under subsection 924 (C)(1)(c). In Apprendi v. New Jersey, 530 U. S. 466, 120 S. Ct. 2348, 147 L.Ed. 2d 435 (2000), and with the original meaning of the Sixth Amendment, any fact that, by law, increases the penalty for crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. If a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations, then those special circumstances must be specified in the indictment. The Indictment in my case fails to specify a 25-year enhancement under 18 U.S.C. § 924 (C)(1)(c), and the judge not the jury increased the punishment above what is otherwise legally proscribed under 18 U.S.C. § 924 (C)(1)(A). Because the jury form indicated that I was convicted of 18 U.S.C. § 924 (C)(1)(A), which carries a five-year mandatory minimum, all facts used to increase the five-year minimum are elements which should have been submitted to the jury."

## CERTIFICATE OF SERVICE

I, LUTHER E. WEAVER, III, ESQUIRE, hereby certify that I have served a copy of the within

Defendant, Jamal Ezell's Amended Section 2255 Motion, upon all attorneys of record by electronic

transmission and by first class mail, postage prepaid addressed as follows:

Jeffery W. Whitt, Esquire
Joan E. Burnes, Esquire
Assistant United States Attorney
U.S. Attorney's Office for the E.D. of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106


_____
LUTHER E. WEAVER, III, ESQUIRE

DATE: September 17, 2013