# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **Civil Action No. 09-5538** |
| **v.** | **:** | |
| **JAMAL EZELL** | **:** | **Criminal No. 02-815-01** |

## ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 United States Code, Section 2255 (docket 196), petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 United States Code, Section 2255 (docket 225), and any responses and replies, it is ORDERED:

1. Grounds One and Two of the Pro Se Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 United States Code, Section 2255 (docket 196) are DENIED.

2. Grounds One, Two, and Six of the Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 United States Code, Section 2255 (docket 225) are DENIED.

3.  An evidentiary hearing will be held on the        day of                        , 2014 on the

    issues of ineffective assistance of counsel as set forth in Grounds Three and Four of the

    petitioner's original Pro Se Motion, and Grounds Three, Four and Five of the Amended

    Motion.

                                    BY THE COURT:


                                    _____

                                    HONORABLE JAN E. DuBOIS
                                    *Senior Judge, United States District Court*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **Civil Action No. 09-5538** |
| **v.** | **:** | |
| **JAMAL EZELL** | **:** | **Criminal No. 02-815-01** |

## GOVERNMENT'S RESPONSE TO PETITIONER'S AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

**COMES NOW**, the United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Jeffery W. Whitt and Joan E. Burnes, Assistant United States Attorneys for the District and respond to petitioner's *Pro Se* and amended motions as follows:

As to petitioner's original, *Pro Se* Motion to Vacate, Set Aside or Correct Sentence filed on November 20, 2009 (docket196);

Grounds One and Two: The claims should be denied without a hearing. For reasons set forth in the attached Government's Memorandum of Law, petitioner's claim of ineffective assistance of counsel against Attorney Eric Vos and Mark Cedrone are conclusory and without satisfactory evidentiary base to merit examination under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Grounds Three and Four: These claims for ineffective assistance of counsel are without merit and should be denied. Alternateively, petitioner may be entitled to a hearing to assess the validity of petitioner's claims of his counsel's deficient representation to be examined under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

As to petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence filed on September 17, 2013;

Grounds One and Two: These claims are procedurally barred  as untimely and should be denied without a hearing.  For the reasons supplied in the attached Government's Memorandum of Law, these claims of deficient representation arise from a separate core of operative facts than the originally filed motion and thus are procedurally barred.

Grounds Three, Four, and Five: These claims are without merit and should be denied.  Alteratively, the government submits that petitioner may be entitled to a hearing to assess the respective attorney's allegedly deficient representation of the petitioner to be examined under Strickland v. Washington, 466 U.S. 668 (1984).

Ground Six: The claim should be denied without a hearing. For the reasons set forth in the attached Government's Memorandum of Law, the Supreme Court's decision in Alleyne v. United States, 133 S.Ct.420 (2012) is not retroactive. Therefore, petitioner's motion should be denied as to Ground Six without a hearing.

**WHEREFORE**, it is respectively requested that as to the petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, the petitioner be granted an evidentiary hearing on Grounds Three and Four of the original, *Pro Se* motion and Grounds Three, Four, and Five of the Amended Motion. It is further requested that petitioner's Motion be denied on Grounds One and Two of the Pro Se Motion and on Grounds One, Two and Six of the Amended Motion.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

_____

JEFFERY W. WHITT
JOAN E. BURNES
Assistant United States Attorneys

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **Civil Action No. 09-5538** |
| **v.** | : | |
| | | **Criminal No. 02-815-01** |
| **JAMAL EZELL** | : | |

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS RESPONSE TO PETITIONER'S PRO SE AND
## AMENDED MOTION TO VACATE, SET ASIDE OR
## CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

Before the Court are four claims in defendant/petitioner Ezell's original/Pro See 2255 motion (docket 196) and six claims in his counseled/amended 2255 motion (docket 225). The amended petition raises two claims (Grounds One and Two) which are procedurally barred because they do not stem from the original 2255. The amended petition raises a claim (Ground Six) not cognizable on collateral review. These claims should be denied without a hearing.

Moreover, by second-guessing various strategic trial decisions, both petitions raise claims that defense counsel was ineffective. The ineffective assistance claims alleged in Grounds One and Two of the pro se petition are so conclusory and without merit, they should be denied without hearing. While the government contends the remaining ineffective assistance claims lack merit, in the alternative, some claims raise a factual dispute which warrant a hearing.

## I.     PROCEDURAL BACKGROUND.

On December 17, 2002, defendant/petitioner Jamal Ezell was charged in a 12-count indictment. Ezell was charged with six counts of Hobbs Act robbery, in violation of 18

U.S.C. § 1951 and 2, together with six counts of using and carrying and aiding and abetting the use of a firearm in furtherance of a violent crime, in violation of 18 U.S.C. § 924(c). The charges arose out of a two-week period in March 2002, when defendant Jamal Ezell and his associates robbed six commercial establishments at gunpoint in three counties in and around Philadelphia.

Prior to trial, counsel for Ezell filed a motion to suppress each of Ezell's two signed confessions to four of the six robberies. This Court denied the motion. Ezell also filed over two dozen *Pro Se* pleadings for his case which this Court denied.

Ezell proceeded to trial on May 2, 2005. At trial, the government presented the testimony of the victims of each robbery, who identified the inside and outside of their commercial establishments through admitted photographs. The victims also described the gunmen and robbers, and the amounts of money the gunmen removed from the safes or cash registers. The victims also testified about the types of products sold in the stores or restaurants, or types of goods and products used to provide services in the stores or restaurants. The government introduced the various photo line-ups during which five employees from three different robberies independently identified defendant Ezell as a participant in the robberies. Photo-prints from a surveillance video showed Ezell and his associate at the time of one of the robberies (Wine and Spirits). The government introduced photo-prints from a surveillance video of yet another establishment (Motel 6) which the defendant and his associates cased, but elected not to rob, immediately before a completed robbery. Two of Ezell's associates who participated in the robberies testified about the robberies and how stores and restaurants were selected to be robbed. Finally, Ezell's two written confessions, covering four of the six robberies, were admitted and read to the jury.

On May 6, 2005, the jury found Ezell guilty of all charges. On March 3, 2006, the district court imposed a sentence of imprisonment of 132 years (1584 months) and one day, a five-year period of supervised release, restitution of $15,227.80, and a special assessment of $1,200.[1]

On February 19, 2008, the United States Court of Appeals for the Third Circuit affirmed the judgment of the district court. The order was formally entered on March 12, 2008. Petitioner filed a Writ of Certiorari with the United States Supreme Court which was denied on December 1, 2008. Petitioner then filed a number of *Pro Se* Motions in district court, including a timely *Pro Se* Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence imposed by the Court on November 21, 2009. (docket 196).

On May 9, 2013, Ezell was appointed attorney Luther E. Weaver, III as counsel to represent him with regard to his pending *Pro Se* § 2255 Motion. On September 17, 2013, counsel filed an amended motion pursuant to § 2255.[2] (docket 225).

## II.  FACTS.

During a two-week period in March 2002, defendant Jamal Ezell, together with his associates Eric Jewell, Eric Mitchell, Alphonso Holder, and Robert Kennell robbed six commercial establishments at gunpoint.

---

[1] Specifically, the court sentenced Ezell to one day imprisonment on Counts One, Three, Five, Seven, Nine, and Eleven (concurrent); a term of 84 months on Count Two; and a term of 300 months on each of Counts Four, Six, Eight, Ten, and Twelve. The sentences as to Counts Two, Four, Six, Eight, Ten, and Twelve are consecutive to each other and to the sentences for Counts One, Three, Five, Seven, Nine, and Eleven. In short, the Court sentenced the defendant to the mandatory minimum 132 years on the Section 924(c) charges and one day for the Hobbs Act robberies, understandably electing to essentially ignore the much higher advisory guideline range for the Hobbs Act offenses.

[2] Mr. Weaver is Ezell's fifth appointed attorney. Ezell was represented by a succession of three appointed attorneys, Eric Vos, Mark Cedrone, and Christopher Warren, at various points prior to and during his trial. Warren served as trial counsel and represented the defendant at sentencing and appeal. For collateral proceedings, NiaLena Caravasos was initially appointed to represent Ezell with respect to his pro se 2255 motion. Caravasos was later allowed to withdraw on May 10, 2013, and Luther Weaver was appointed to represent Ezell.

**Upper Merion Wine and Spirit Shoppe (Counts 1 & 2)**

On March 5, 2002, defendant Ezell, along with Jewell and Mitchell, robbed the Wine and Spirit Shoppe on Gulph Road in Upper Merion, at approximately 11 a.m. SA 212-34, 240-53, 517-33, 619-30.[3]

That morning, Ezell drove Mitchell's Subaru station wagon, with Jewell and Mitchell as passengers, to the King of Prussia area of suburban Philadelphia. SA 517, 619-20. Before robbing the wine store, Jewell, Mitchell, and Ezell cased a nearby Motel 6, which they elected not to rob. SA 518, 622. All three appear on a security videotape which was retrieved from the Motel 6, and the government introduced photo-prints of the three robbers in the lobby of the Motel 6. SA 519-27, 623-26.

After leaving the Motel 6, Ezell, Jewell, and Mitchell drove to the nearby wine store. SA 527, 626. Two employees, Jeffrey Stepp and Neil Johnson, were working at the store. SA 212, 240. After determining that no customers were in the store, the three robbers entered. SA 528. Ezell and one of the others brandished guns. SA 217, 243, 530, 626. During the robbery, the two clerks in the store were threatened and later bound with duct tape. SA 224, 226, 253, 530-31, 628-29. Approximately $2,500 was taken from the wine store safe and cash register, along with the videotape from the wine store video camera. SA 381, 530, 628. Ezell admitted his participation in this robbery in two signed statements, one given to Detective Robert Geary of the Philadelphia Police on May 17, 2002, and another given to Detective James Godby of Upper Merion Police on May 30, 2002. SA 710-16, 723-43.

Guy Stewart, a regional manager for the Pennsylvania Liquor Control Board ("LCB"), which operated the liquor store, has worked for the LCB for 35 years. SA 379. He

_____
[3] The amended 2255 petition attached the trial transcript as exhibits which include sequentially numbered pages labelled SA. Therefore, cites to "SA" in this brief refer to the page numbers of the transcripts attached to docket 225.

testified that the central warehouse for the southeastern Pennsylvania region, including the South Philadelphia store and the Upper Merion store, is in Philadelphia. The LCB gets liquor delivered to its warehouses, including bourbon from Kentucky; California wine from California; Jack Daniels whisky from Tennessee; Belvedere vodka from Poland; and Grey Goose Vodka from France. SA 379-81. From the warehouse, the liquor goes to the individual stores where it is offered for sale. SA 381-82.

## ABC Auto Parts (Counts 3 and 4)

On the evening of March 5, 2002 (the same day as the Upper Merion Wine and Spirit robbery), Ezell, together with Jewell and Mitchell, robbed the ABC Auto Parts on Marshall Road in Upper Darby. SA 533-36, 631-35. Once again, Ezell drove Mitchell's Subaru with Mitchell and Jewell as passengers. SA 533, 631.

James Pomante and Rahman Warfield were working in the auto store that evening. SA 256, 273. Around 9 p.m., Ezell, Jewell, and Mitchell entered the store; Ezell carried a gun. SA 534, 631-32. After a customer left the store, Ezell drew the gun and announced the robbery. SA 261, 276-79, 534-35, 632. One of the victims was bound with an electrical cord and the other with masking tape. SA536, 633. The robbers smashed a cell phone, tore wires, and ultimately took a total of approximately $2,500 from the safe and cash drawer. SA 277, 290, 536, 633-34. Both victims later independently identified Ezell from police photo spreads. SA 267, 271, 283, 691-702.

Robert Koons testified that he was district manager for Auto Zone, the parent company of ABC Auto, for four years. SA 288. He testified that Auto Zone is headquartered in Cherry Hill, New Jersey. The Upper Darby store received all of its merchandise and supplies, such as the spark plugs and car batteries offered for sale in the store, from the company's

distribution center in Cherry Hill, New Jersey. SA 288-89. The money that the Upper Darby store takes in through sales is deposited into a bank and drawn out by the headquarters in Cherry Hill, New Jersey. SA 290.

## Peoples Cleaners (Counts 5 and 6)

Five days later, on March 10, 2002, defendant Ezell, along with Jewell and Ezell's cousin, Alphonso Holder (a/k/a "Bum"). robbed Peoples Cleaners on DeKalb Pike in Upper Merion. SA 546-51. Lisa Ann Morasco was working alone in the shop when the three robbers came in. SA 299-300. Ezell entered first, posing as a customer presenting a jacket for repair. SA 304, 549. Another subject pointed a gun at her, and her hands were bound with duct tape. SA 307, 312, 317, 549-51. Approximately $653 was taken from the cash register. SA 324. In the signed statement which Ezell gave to the Upper Merion Police on May 30, 2002, Ezell admitted that he committed the robbery with Jewell and Holder by posing as a customer presenting a jacket for repair. SA 723-43.

Ms. Morasco further testified that, as bookkeeper for Peoples Cleaners, she was responsible for purchasing merchandise and supplies, such as plastic dry cleaning bags, hangers, and tissue paper. SA 324-25. The money to make those purchases came from the store's cash register sales receipts. SA 324-25. Todd McKenna testified that he owns Ferguson-McKenna Supply, a company which sells supplies to dry cleaners. In March 2002, his company supplied all dry cleaning supplies, such as hangers and plastics and tickets and tags, on a weekly basis to Peoples Cleaners. SA 332-33. The hangers came from New Jersey, Virginia, Florida, and China. The garment bags came from New York and Florida. SA 333-35. McKenna's company was paid by Peoples Cleaners in exchange for providing supplies. SA 335.

## Delaware Avenue Wine and Spirit Shoppe (Counts 7 and 8)

Two days later, on March 12, 2002, defendant Ezell, along with Jewell, robbed the Wine and Spirit Shoppe, another LCB purveyor, on Delaware Avenue in Philadelphia. SA 337-76, 537-46. Around 9:00 p.m, store employees Paulette Lewis and Kenneth Smalls were preparing to close the store. SA 337-38, 359-60. Ezell and Jewell entered the store and demanded money at gunpoint. SA 342-43, 363-66, 537-38. Photos from the store surveillance camera show the defendant in the store. SA 347-51, 368-71, 541-46. Ezell demanded money from Lewis at the cash register; Jewell carried the gun and demanded money from Smalls at the safe. SA 340-45, 364-67, 539. The victims were bound with duct tape, and the robbers escaped with $630 and bottles of vodka. SA 344, 381-83. Each victim independently identified Ezell from a photo spread. SA 354-56, 371-74, 709-10. Ezell confessed to his participation in this robbery in the May 17, 2002, signed statement given to the Philadelphia Police. SA 710-16.

## Hooters Restaurant in Upper Merion (Counts 9 and 10)

Shortly after midnight on March 15, 2002, defendant Ezell, together with Jewell, Mitchell, and Angelo Hall, robbed the Hooters Restaurant on Route 202 in Upper Merion. SA 551-58, 635-42. Ezell drove the four robbers to King of Prussia in his wood paneled station wagon. SA 552. Armed with guns, they waited by the dumpsters around the back of the restaurant. SA 553-54, 637-38. A Hooters employee, Ryan Meyers, left the building through a back door to empty the trash, when he was confronted by the four men. They all entered the restaurant, where Meyers and seven other employees were rounded up and directed into a small office. SA 388-404, 407-23, 556, 641. Hooters manager Arnie Mincey opened the safe for the armed robbers, who took the day's receipts of about $5,500. SA 412-13, 430. Cook Toby Parker later identified Ezell's photo from a photo lineup. SA 400, 710-16. In his May 30, 2002,

statement to the Upper Merion Police, Ezell admitted committing the robbery with Jewell, Mitchell, and Hall.  SA 723-43.

Dale Turuga is Chief Financial Officer of Hoot Owls Restaurants, which owns Hooters.  SA 426.  He testified that the Hooters in Upper Merion purchased food supplies from a company in Maryland and purchased T-shirts from vendors in Florida, Georgia, and Vancouver, Canada.  SA 427.  Silverware and freezers were purchased from Florida.  SA 428-30.

## Pizzeria Uno in Philadelphia (Counts 11 and 12)

Shortly after midnight on March 20, 2002, Ezell, along with his associates Jewell and Mitchell, robbed a Pizzeria Uno restaurant on Grant Avenue in northeast Philadelphia.  SA 446-95, 558-63, 642-46.  This robbery also started with an employee (Kenneth Sheridan) being confronted by the robbers when he left through the back door to put trash in the restaurant dumpsters.  SA 447-50, 457-58, 560.  Sheridan and another employee, Marlo Speed, reentered the restaurant with the robbers, and were herded into an office with four other employees.  SA 450, 458-67, 645.  Store employees were threatened and several had their hands bound with duct tape.  SA 458-67, 469-74, 480-88.  Approximately $2,999 was taken from the office safe.  SA 499.

Angela Bok is director of business development for the Bok Group, which manages the Grant Avenue Pizzeria Uno.  SA 497.  She testified that the food that was sold in Uno in March 2002 was purchased from Maryland, except for the produce which came from New Jersey.  SA 498-99.  She testified that the money that is used to purchase supplies comes from restaurant sales.  SA 499.  She testified that the money taken from the robbery of the restaurant diminished the resources available to buy food and supplies for the business.  SA 499.

## III. **THE MOTIONS.**

As discussed above, the facts of this case are not in dispute. During a two-week period in March 2002, defendant Jamal Ezell, together with his associates, robbed six commercial establishments at gunpoint—that is, by using and carrying guns, and binding some of the victims. Ezell's victims were restaurant cooks, retail managers, clerks, and cashiers; his victims were people who were simply working at a liquor store, a dry cleaners, an auto store, or a restaurant, when Ezell and his associates decided to rob the stores carrying guns. Before the court are four claims in Ezell's original/Pro Se 2255 motion and six claims in his counseled/amended 2255 motion. The record shows that the evidence in this case was overwhelming and that a series of attorneys diligently pursued various defenses, explored all possibilities of a non-trial disposition, and ultimately took the case to trial as defendant chose to exercise that right. The motions should be denied.

In the *Pro Se* motion, Ezell alleges the following: 1) counsel during arraignment, Eric Vos, was ineffective in failing to advise Ezell on the offenses and penalties he was facing, and expressed no zeal or diligence in his defense; 2) counsel Mark Cedrone was ineffective in his failure to successfully assert a motion to suppress video evidence and subsequently inform the government of his desire to plea; 3) trial counsel Christopher Warren failed to investigate the law and procedure surrounding petitioner's case and also failed to inform the government of his desire to plea; and 4) trial counsel Christopher Warren failed to develop a case theory that would lessen Ezell's role in the offenses he was charged with. Thus, the core of these claims is petitioner's alleged desire to seek a plea and petitioner's desire for a trial theory that would lessen Ezell's role in the crimes.

In the Amended 2255 motion, petitioner asserts six claims for deficient counsel. Specifically, 1) trial counsel Christopher Warren failed to object to inadmissible bad act evidence at trial; 2) trial counsel presented ineffective opening and closing arguments; 3) petitioner was denied effective counsel during plea bargaining; 4) trial counsel Warren pursued a defense that he knew was contrary to the state of the law; 5) trial counsel's overall performance denied petitioner his right to a fair trial; and 6) that the Court impermissibly allowed proof that the defendant brandished a firearm be found by judicial determination rather than by the jury.

A.    **Petitioner's Amended 2255 Raises Issues That Do Not Stem From The Pro Se 2255 And Are Thus Barred As Untimely.**

Petitioner's amended motion raises new claims for relief that must be procedurally barred because they do not relate to those claims previously asserted in his original 2255 motion. Section 2255 of Title 28 United States Code holds that any claim raised for the first time in an amended post-conviction motion and filed outside the one year limitations period must relate back to the original motion in order to be timely. 28 U.S.C.A. § 2255. To relate back, the amendment must assert a claim or defense that arose out of the "conduct, transaction, or occurrence set out, or attempted to be set out, in the original pleading." Martin v. U.S., 834 F.Supp.2d 115 (E.D.N.Y. 2011). Essentially, so long as the original and amended petitions state claims that are tied to a common *core of operative facts*, relation back will be in order. Id., (emphasis added).

Section 2255 requires that amended claims relate back because Federal Habeas petitions are civil actions. As such, Federal Rule of Civil Procedure 15(c)(1)(B)'s relation-back provision is controlling and AEDPA's one-year statute of limitations applies. See Mayle v. Felix, 545 U.S. 644, 656 (2005). Rule 15(c)(1)(B) provides that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of

the same "conduct, transaction, or occurrence." Fed. Rule Civ. Proc. 15(c)(1)(B); Hodge v. United States, 554 F.3d 372, 378 (3d Cir. 2009), citing Mayle, 545 U.S. 644, 648 (2005).

The Third Circuit and most sister circuits restrict the definition of "conduct, transaction, or occurrence" for the purpose of relation back to when the claims added by amendment arise from the "common core of operative facts" as the timely filed claims, not when the new claims depend upon events separate in "both time and type" from the originally raised episodes. Mayle, 545 U.S. at 657; Hodge, 554 F.3d at 378. The Supreme Court makes clear this is consistent with the purpose of the AEDPA: "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." Mayle, 545 U.S. at 662

The ineffective assistance claims alleged in the counseled petition at Grounds One and Two — failure to object to inadmissible bad act evidence and ineffective opening and closing arguments — are new claims raised for the first time in counsel's brief filed on September 17, 2013, and plainly barred as untimely. In petitioner's original, timely filed 2255 petition, Ezell asserts four grounds for relief: 1) that his initially appointed counsel, Eric Vos, failed to investigate the law in violation of petitioner's Sixth Amendment right to assistance of counsel; 2) that subsequent counsel Mark Cedrone failed to file suppression motions or to inform the government of petitioner's willingness to plea in violation of his Sixth Amendment right to assistance of counsel; 3) that trial counsel, Christopher Warren, failed to advise petitioner of the penalties he was facing as well as inform the court of petitioner's willingness to plea, in violation of his Fifth and Sixth Amendment rights; 4) and finally, counsel Warren's failure to develop a sufficient defense theory that lessened Ezell's role or inform the court of petitioner's willingness to plea, all in violation of petitioner's Sixth Amendment right to counsel. Thus, the core of these

claims is petitioner's alleged desire to seek a plea and petitioner's desire for a trial theory that would lessen Ezell's role in the crimes.

However, in the Amended Motion petitioner additionally asserts claims that trial counsel Warren failed to object to inadmissible bad act evidence in violation of the Sixth Amendment and that trial counsel's opening and closing arguments were ineffective so as to violate the Sixth Amendment. See docket 225. These two grounds for relief do not relate back to the core of operative facts raised in petitioner's first, timely filing. Both new grounds involve different periods of time during judicial proceedings, and different conduct by defense counsel so as to render them outside of the conduct, transaction or occurrence required by the Supreme Court under Mayle. Counsel Warren's failure or strategy in declining to object to allegedly inadmissible bad act evidence does not relate to petitioner's alleged desire to seek a plea in his case as was asserted in the original petition.

Nor does ground two--counsel's strategy chosen to present to the jury during opening and closing arguments--relate back to Ezell's claim about the failure to develop a defense theory. Ezell's claim in the original petition involves his desire for a case theory "that would lessen my role in this offense," docket 196 at p. 7, not a disagreement with counselor Warren's focus on interstate commerce during opening and closing statements. Thus, the first two grounds of the amended motion pursuant to 2255 do not relate back as required by Rule 15 (c)(2) of the Federal Rules of Civil Procedure. Claims one and two of the amended 2255 petition fall outside of the statute of limitations prescribed by Congress in the AEDPA and must be dismissed as untimely. See Mayle v. Felix, 545 U.S. 644 (2005).

## IV. **Trial Counsel Was Not Ineffective.**

By second guessing various decisions made by a succession of three appointed trial attorneys, both the Pro Se and Amended petitions raise ineffective assistance of counsel

claims. These claims are without merit. The Supreme Court has articulated the well-worn legal standard applicable to a claim of ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner must satisfy a two-prong test before his conviction will be overturned on ineffective counsel grounds.

> To succeed on a claim of ineffective assistance of counsel, a defendant must show both that i) the performance of counsel fell below an objective standard of reasonableness and ii) the errors of counsel prejudiced the defense. [citing Strickland, 466 U.S. at 687-88.] To establish the first prong a defendant must "establish ... that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.2001). "This requires showing that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." (Id.).

Jansen v. United States, 369 F.3d 237, 243 (3d Cir. 2004).

Under the first part of the Strickland test "showing that counsel's performance was deficient" the defendant must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. There is "a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." Id. at 689. "The constitutional right to effective assistance of counsel demands that the petitioner's attorney exercise 'the customary skill and knowledge which normally prevails at the time and place' of trial" Gov't of Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir. 1984) (citing and quoting cases). Therefore, "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Gray, 878 F.2d 702, 711 (3rd Cir.1989); Buehl v. Vaughn, 166 F.3rd 163, 169 (3rd Cir. 1999).

Second, the defendant must show that counsel's ineffectiveness prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. The defendant must

show that there is "[a] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; Diggs v. Owens, 833 F.2d 439, 445 (3d Cir. 1987). The 'prejudice' component of the Strickland test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

In evaluating the prejudice requirement, judicial scrutiny of an attorney's performance must be highly deferential. As the Supreme Court stated in Strickland:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689 (citation omitted). The defendant's allegations here fail to demonstrate either deficiency or prejudice.

**A.      Petitioner's Pro Se Claim Of Deficient Representation By Attorney Eric Vos Is Conclusory and Does Not Qualify as Ineffective Assistance of Counsel.**

Petitioner's claim for ineffective assistance of counsel against attorney Eric Vos is conclusory and without merit. In Ground One of his original *pro se* petition, Ezell asserts that attorney Eric Vos "failed to investigate the law, informed [petitioner] that he did not intend to defend [him], expressed no zeal or diligence toward representing [petitioner] or protecting [petitioner's] rights." (*Pro Se* Pet. at 6).

While the government can neither confirm nor deny allegations of statements made by defense counsel to his client, Ezell's claim for relief as raised cannot succeed under the standard for deficient claims under <u>Strickland</u>.  The habeas rule instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground." <u>Mayle v. Felix</u>, 545 U.S. 644, 649 (2005).  The Third Circuit has emphasized that "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing" on a habeas petition. <u>Palmer v. Hendricks</u>, 592 F.3d 386, 395 (3d Cir. 2010); <u>Campbell v. Burris</u>, 515 F.3d 172, 184 (3d Cir. 2008). "[O]nly where the § 2255 raises "detailed and specific" factual allegations…must a hearing be held. <u>United States v. Pollard</u>, 959 F.2d 1011, 1030-31 (D.C. Cir. 1992). Rule 4(b) of the Rules Governing Section 2255 Proceedings requires a judge to order the summary dismissal of a Section 2255 petition "[i]f it plainly appears from the face of the motion and any annexed exhibits and prior proceedings in the case that the movant is not entitled to relief."  Other circuits hold similarly that a habeas petitioner's nonspecific or conclusory allegations of ineffective assistance of counsel do not compel district courts to convene evidentiary hearings in order to delve into the unelaborated factual basis of a habeas petition. <u>See e.g.</u>, <u>Anderson v. Attorney Gen. of Kansas</u>, 425 F.3d 853, 858-59 (10th Cir. 2005); <u>Barry v. United States</u>, 528 F.2d 1094, 1102 (7th Cir.1976).  Ezell's claim against Attorney Vos contains no factual matter regarding <u>Strickland</u>'s prejudice prong, and his reference to vague allegations of Vos's intentions and "failure to investigate" are precisely the sort of unadorned legal conclusion that, without supporting factual allegations, are insufficient to warrant an evidentiary hearing.

Further, while the government does not concede any merit to Petitioner's assertions that attorney Eric Vos was deficient, any failure to investigate the law or lack of zeal

or diligence would fail to meet the prejudice standard of <u>Strickland</u>. <u>Strickland</u>'s second prong requires a petitioner to show that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694; <u>Palmer v. Hendricks</u>, 592 F.3d 386, 394 (3d Cir. 2010). According to Petitioner's *Pro Se* petition, attorney Eric Vos represented Ezell solely during his preliminary hearing at which time Vos allegedly encouraged petitioner to plead guilty. Moreover, Ezell was allowed to discharge Vos long before any pretrial hearings or the actual trial in this case. Since there is a wide span of time after the preliminary hearing in which defendant's may change their original plea, any error as a result of attorney Vos's instruction would not have changed the outcome of petitioner's case following the trial in this case. Thus, petitioner's claim fails the prejudice prong of <u>Strickland</u>. [4]

### B. Attorney Mark Cedrone's Failure to Successfully Suppress Video Evidence Does Not Qualify as Ineffective Assistance of Counsel

Ground Two of petitioner's original *pro se* motion against attorney Mark Cedrone alleging failure to successfully suppress video tapes of petitioner was not deficient and did not unfairly prejudice the defense of petitioner. To be clear, the government did not play videos at trial. However, the government did introduce—and co-conspirators testified about-- photo-prints

---

[4]   To the extent that Ezell's pro se pleading suggests that it was ineffective assistance to sign a proffer letter and permit Ezell to proffer with the government, the claim is baseless and absurd. <u>See</u> Docket 196 at affidavit page 1. It was, of course, Ezell's choice to proffer. Ezell not only proffered with attorney Vos, he did so again with attorneys Cedrone and Warren, all in a reasonable attempt to determine if a non-trial disposition was possible in this case. In a case such as this, with overwhelming evidence— including two signed confessions and several witness identifications--it is difficult to imagine that performance of counsel fell below an objective standard of reasonableness in permitting Ezell to proffer with the government.  <u>Strickland</u>, 466 U.S. at 687-88. Likewise, any claim that the proffers limited trial counsel's strategy at trial cannot show prejudice where, as here the evidence included victim identifications of Ezell; photographs of Ezell; confessions by Ezell; and cooperator testimony against Ezell.

from a surveillance video showing Ezell and his associate at the time of one of the robberies (Wine and Spirits); and  photo-prints from a surveillance video of a Motel 6 which the defendant and his associates cased, but elected not to rob, immediately before a completed robbery.  See SA 347-51, 368-71, 541-46, 519-27; 623-26.  Ezell does not identify—nor does appointed counsel attempt to identify-- grounds upon which these video photo-prints could or should be suppressed.

Indeed, since these were surveillance videos provided to law enforcement from commercial/victim establishments and authenticated at trial, there is no apparent Fourth Amendment basis for suppression.  It cannot be claimed that it is objectively deficient performance to decline to pursue suppression.  Strickland, 466 U.S. at 687-88.  And there is no deprivation of effective counsel based on an attorney's failure to raise a meritless argument. Sanders, 165 F.3d at  253.

Moreover, it is well established that in order to meet the standard under Strickland the actions of counsel need not only be unreasonable, but that these actions actually had an adverse effect on the defense of the defendant. In other words, in order to succeed under Strickland the deficient performance must have prejudiced the defendant. Strickland, 466 U.S. at 693. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.   In the instant case the weight of the government's case against the petitioner was overwhelming and more than sufficient to convict for the charges he was facing with or without video photo prints of him in the state liquor store or in a Motel 6 prior to the robbery of the Hooters  Montgomery County. The government and investigators had corroborating witness testimony, positive identification from victims and the defendant's own

prior, post Miranda admissions to local law enforcement corroborating the footage from the video surveillance. Thus, the petitioner cannot succeed in claiming ineffective assistance of counsel with regards to Mark Cedrone and his claim must fail, without a hearing.

**C. Defense Counsel's Failure to Object at Trial Does Not Qualify as Ineffective Assistance of Counsel**

As discussed above, Ground One of Petitioner's amended motion regarding trial counsel's failure to object to allegedly inadmissible bad act evidence should be dismissed as untimely because it does not relate back to his original petition. However, the claim also fails on the merits because it was permissible trial strategy and did not prejudice the defense of Petitioner.

As stated previously, in order to successfully show ineffective assistance petitioner must show first that counsel's performance fell below an objective standard of reasonableness, and second that this failure caused the petitioner's defense to be prejudiced. Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Grant v. Stickman, 122 F. App'x 590, 596 (3rd Cir. 2005); citing Strickland at 690-91. An attorney's failure to raise a meritless argument or objection cannot be held to amount to a deprivation of counsel as guaranteed by the Sixth Amendment. Broaster v. Houtzdale, 2011 WL 3438313 (E.D. Pa. 2011); citing United States v. Sanders, 165 F.3rd 248, 253 (3rd Cir.1999). Here the prosecution's line of questioning surrounding the detectives' creation and implementation of photographs for line-ups was admissible for a non-character purpose, and was not unfairly prejudicial.

The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character. United States v. Cross, 308 F.3rd 308, 321 (3rd Cir. 2002); Huddleston v. United States, 485

U.S. 681, 686 (1988); <u>United States v. Heath</u>, 456 F. App'x 102, 103 (3rd Cir. 2011) <u>cert. denied,</u>

132 S. Ct. 1601 (U.S. 2012). When the failure of defense counsel to object involves an

impermissible inference, it violates the Due Process Clause only if the suggested conclusion is

not one that reason and common sense justify in light of the proven facts before the jury. <u>Francis</u>

<u>v. Franklin</u>, 471 U.S. 307, 314-15 (1985) (failure to object to impermissible jury instruction is

harmless error if it involved an inference the jury could reasonably have reached themselves);

<u>see also</u> <u>County Court of Ulster County, New York v. Allen</u>, 442 U.S. 140, 157 (1979). Rule 403

allows the trial judge to exclude relevant evidence if, among other things, "its probative value is

substantially outweighed by the danger of unfair prejudice." Rule 404(b), protects against the

introduction of extrinsic act evidence when that evidence is offered solely to prove character. It

does not flatly prohibit the introduction of such evidence but instead limits the purpose for which

it may be introduced. There is no implication that a preliminary showing is necessary before such

evidence may be introduced for a proper purpose. If offered for such a proper purpose, the

evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.

<u>Huddleston v. United States</u>, 485 U.S. 681, 687-88 (1988).

   Here, defense counsel's failure to object to the prosecution's line of questioning

surrounding the detectives' creation and implementation of photographs for photo line-ups

amounts to permissible attorney strategy.  The strategy acknowledge that the robbery

participants—including Ezell – had been arrested by the state before the case was adopted

federally.  Indeed, it was Ezell's arrest and signed statement in the Philadelphia case that enabled

detectives to have a picture of the defendant to show victims of other crimes.   Therefore, the fact

that Ezell had been arrested by one county prior to his arrest in other counties which ultimately

led to his prosecution in federal court was a simple and logical inference the jury could have

reached even without the detectives' statements that they procured the pictures from law enforcement databases. Moreover, defense counsel's failure to object amounts to permissible attorney strategy and otherwise harmless error. Ezell cannot establish a reasonable probability that the outcome would have been different but for counsel's failure to object. As such, it did not unduly prejudice the petitioner and his claim of ineffective assistance of counsel must fail.

### D. Defense Opening, Closing And Trial Strategy Do Not Qualify as Ineffective Assistance of Counsel

Ezell asserts in Grounds Three and Four of his *pro se* motion and Grounds Two and Four of the counseled Amended Motion that trial counsel was deficient in his presentation of case theory at trial. The question of whether counsel's strategy was reasonable goes directly to the performance prong of the <u>Strickland</u> test. <u>Buehl v. Vaughn</u>, 1996 WL 752959 (E.D. Pa. 1996) <u>aff'd</u>, 166 F.3rd 163 (3rd Cir. 1999); <u>citing</u> <u>Berryman v. Morton</u>, 100 F.3rd 1089, 1095 (3rd Cir. 1996). In order to succeed under <u>Strickland</u> the deficient performance must have prejudiced the defendant. <u>Strickland</u> 466 U.S. at 693. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. Unreasonable strategy when defense counsel's opening or closing rhetoric is at issue, has been determined to run afoul of reasonable where the claims made during opening and/or closing were such that it undermined counsel's ability to adequately advocate at a later stage of trial (like sentencing). <u>See</u> <u>Buehl v. Vaughn</u>, 1996 WL 752959 (3rd Cir. 1996).

In this case, prior to trial Petitioner made two formal statements to local law enforcement confessing to four of the six robberies for which he was convicted. Further, upon federal adoption Petitioner made a formal proffer statement to the United States Attorney's

Office with similar results. In light of this, defense counsel's choice of strategy was not only reasonable and thus Petitioner's claim fails on the first prong of the Strickland examination, but also failed to prejudice the defense of Petitioner, that the trial result would be different.

Indeed, evidence of Defense counsel's choice of trial strategy was discussed at sidebar immediately preceding trial. See SA 6-8. The existence of the chosen strategy, whether this Court would have picked it or not, defeats the claim of ineffective assistance of counsel. That is because where counsel pursued an informed strategy the presumption of competent assistance is "virtually unchallengeable." Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 2005), quoting Strickland, 466 U.S. at 690. Defense counsel Warren's theory, consistent throughout the trial, (and advanced by petitioner himself in various pro se pleadings) was that the government's evidence could not show the crimes affected interstate commerce, thus did not belong in federal court, and that the jury should therefore find reasonable doubt and acquit Ezell to send him back to state court. Counsel for Ezell faithfully pursued his chosen defense, questioning each witness about interstate commerce and frequently succeeding in getting admissions about the lack of business activity in the stores at the time of the crimes. Mr. Warren faced a case with overwhelming evidence but there can be no claim that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland 466 U.S. at 687.

### E. Ezell Has No Valid Claim for Ineffective Assistance of Counsel in Connection with Plea Negotiations

In Grounds Three and Four of the original *Pro Se* Motion and Ground Three of the Amended Motion Petitioner alleges counsel failed to advise him regarding plea negotiations in violation of his Sixth Amendment rights. This claim, which is wholly contradicted by the record, should be rejected without a hearing.

When evaluating counsel's performance during plea bargaining, an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance. Lafler v. Cooper, 132 S. Ct. 1376, 1390-91 (2012). The Third Circuit held, while there is no specific standard defense counsel must meet in assessing the desirability of a plea offer or potential sentence exposure, familiarity with the structure and basic content of the Guidelines is necessary for counsel's effective representation. United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).

The standard for advising a defendant regarding a plea offer does not include minute detail of the various nuances surrounding the plea process. Rather, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." See Hill v. Lockhart, 474 U.S. 52, 56-57 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); Von Moltke v. Gillies, 332 U.S. 708, 721(1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). Day, 969 F.2d at 43.

If it is established that deficiency is theoretically possible, the question becomes whether Ezell suffered sufficient prejudice in fact, which requires examination of whether he would have accepted the alleged plea offer and whether the district court would have approved it. See Day, 969 F.2d at 45. The second, or "prejudice" requirement, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In order to establish the prejudice prong of Strickland during plea bargaining, petitioner must show that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea. Lafler v. Cooper, 132 S. Ct. 1376, 1391 (2012); cf. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In the Third Circuit, objective evidence is required to show that petitioner would have accepted a plea offer and that failure to accept a plea prejudiced his case. See Day, 969 F.2d at 45. The Seventh Circuit also adopted a requirement of some "objective evidence" that a petitioner would have accepted a plea offer in assessing a defendant's claim of ineffective assistance of counsel in plea bargaining. See Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir.1991), cert. denied, 505 U.S. 1223 (1992). Sister Circuits have demanded likewise. See e.g., Diaz v. United States, 930 F.2d 832, 835 (11th Cir.1991) (awareness of plea offer and after-the-fact testimony concerning desire to plead is insufficient evidence); Turner v. State of Tenn., 858 F.2d 1201, 1206 (6th Cir. 1988) cert. granted, judgment vacated sub nom. Tennessee v. Turner, 492 U.S. 902 (1989); see Alabama v. Smith, 490 U.S. 794 (1989) (holding no presumption of vindictiveness arose when sentence imposed after trial was greater than that previously imposed after guilty plea.).

Here, Petitioner was advised about the opportunity for a plea agreement numerous times through the course of his case. See, e.g. Docket No. 60 (transcript of October 10, 2003 hearing at page 9, 29, 42). Ezell repeatedly refused to take a plea agreement, and further refused to cooperate with the government in order to approach the idea of a plea. For example, a docket entry of August 13, 2004, shows this Court ordered parties from both the government and defense counsel to report to the court during the week of August 16, 2004, with respect to the defendant's stated intention to cooperate with the government. Docket No. 102. However, the defendant's status letter to the Court from attorney Mark Cedrone dated, August 18, 2004, demonstrates that that the defendant was not interested in accepting a plea agreement offer from the government. See exhibit A, August 18, 2004 Letter from Mark Cedron to Court.

Specifically, Mr. Cedrone recounts that on August 12, 2004, the government "met directly with Mr. Ezell in an effort to see whether there was something that could be done to move this case closer to a non-trial disposition." Id. Mr. Cedrone explains "I spent a considerable amount of time with Mr. Ezell on Monday . . . to determine whether Mr. Ezell would accept [the government's] invitation to discuss the matter further…Ezell is not inclined to meet with the government unless the government can first provide some assurances that his sentence will be less than 32 years. I explained to Mr. Ezell that this is not how cooperation plea agreements work." Indeed, Mr. Cedrone was willing to try the case, but suggested that the court appoint new counsel "who may have more success than I working toward a non-trial disposition."

In short, the record is replete with references that Ezell was aware of the plea bargaining process and was counseled by three different attorneys (Vos, Cedrone and Warren) about pleading guilty. On collateral review, Ezell unilaterally suggests terms to which he would hypothetically have pleaded guilty (one 924(c) and the 6 robbery counts without cooperation) without any suggestion that such a plea (dismissal of the additional five 924(c) counts for which he was readily convicted at trial) was available (i.e. offered by the government and would have been accepted by the court). Unlike <u>Lafler</u> and <u>Day</u>, there is no claim here that a plea offer was not communicated, or that a plea was communicated but rejected due to some deficiencies of counsel. Ezell is entitled to no relief under this record, and these claims should be dismissed without a hearing.

## V.  Standards for Holding an Evidentiary Hearing.

When a motion is made under 28 U.S.C. § 2255, the question of whether to order an evidentiary hearing is committed to the sound discretion of the district court. In exercising

that discretion, the district court must accept the truth of the defendant's factual allegations unless they are clearly frivolous on the basis of the existing record. Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3rd Cir. 1988); Government of the Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3rd Cir. 1984).

"However, "[o]nly where the § 2255 raises "detailed and specific" factual allegations…must a hearing be held. United States v. Pollard, 959 F.2d 1011, 1030-31 (D.C. Cir. 1992). As the Third Circuit stated in United States v. Williams, 615 F.2d 585, 589 (3rd Cir. 1980), relief is justified under Section 2255 only if petitioner shows a "fundamental defect which inherently results in a complete miscarriage of justice…[T]he claimed error must present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Rule 4(b) of the Rules Governing Section 2255 Proceedings requires a judge to order the summary dismissal of a Section 2255 petition "[i]f it plainly appears from the face of the motion and any annexed exhibits and prior proceedings in the case that the movant is not entitled to relief."

In this case, several of defendant's allegations are so speculative and conclusory in light of the substantial record that this Court would be well within its discretion in refusing to hold a hearing. At most, the government believes that the petitioner may be entitled to an evidentiary hearing on some of his claims of ineffective assistance of counsel, namely Grounds Three and Four of the original petition and Three, Four and Five of the Amended petition. As discussed above, claims of ineffective assistance of counsel are reviewed under the two-pronged test announced in Strickland v. Washington, 466 U.S. 668 (1984). Under this standard, the defendant must show both prongs of a two part test. First, that his counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional

norms. Id. at 688.  Second, that counsel's ineffectiveness was so serious as to deprive the

defendant of a fair trial whose result is reliable. Id. at 687.

**VI.**     **Petitioner is Not Entitled to Relief Under Alleyne**

    **A.  Alleyne is Not Retroactive and as Such Petitioner's Claim Must Fail**

        In his final claim in the amended petition, counsel alleges a Sixth Amendment

violation because the determination of whether the defendant "brandished" a firearm was not

presented to the jury.[5]   In Alleyne, 133 S.Ct. 2151 (2013), the Supreme Court overturned its

2002 decision in Harris, and held that any fact (other than prior conviction) which increases a

statutory mandatory minimum sentence must be proven to a jury beyond a reasonable doubt, or

admitted by the defendant.  This holding extends to the context of statutory mandatory

minimums the familiar rule of Apprendi v. New Jersey, 530 U.S. 466 (2000), decided as a matter

of Sixth Amendment jurisprudence, which addressed facts increasing a statutory maximum

sentence.  Alleyne involved the same mandatory minimum at issue in Ezell's case -- the

provision of 18 U.S.C. § 924(c) which raises the mandatory minimum penalty for using or

carrying a gun during and in relation to a crime of violence from 60 months to 84 months upon a

finding that the defendant "brandished" the gun. However, Alleyne is a "new rule"which restarts

the 2255 clock only if the rule is "made retroactively applicable to cases on collateral review."

Alleyne does not qualify; it is not retroactive to any case on collateral review.

        The Supreme Court has long held that its new constitutional decisions are not

necessarily applicable to proceedings that had been completed when the new decisions were

rendered.  See Allen v. Hardy, 478 U.S. 255 (1986) (jury selection rule of Batson v. Kentucky,

476 U.S. 79 (1986), not applicable to cases on collateral review); Solem v. Stumes, 465 U.S. 638

---

[5]   The government notes at the outset that, the Alleyne issue in this case only concerns 2 years of a 132-year sentence.  As counsel concedes in his footnote, Alleyne does not apply to the 25-year sentences for successive 924(c)s.  See Docket 225 at n.6.

(1984) (custodial interrogation rule of <u>Edwards v. Arizona</u>, 451 U.S. 477 (1984), not applicable to cases on collateral review); <u>Michigan v. Payne</u>, 412 U.S. 47 (1973) (prophylactic sentencing rule of <u>North Carolina v. Pearce</u>, 395 U.S. 711 (1969), not retroactive); <u>Halliday v. United States</u>, 394 U.S. 831 (1969) (guilty plea acceptance rule of <u>McCarthy v. United States</u>, 394 U.S. 459 (1969), not retroactive); <u>Stovall v. Denno</u>, 388 U.S. 293 (1967) (identification procedure decisions of <u>United States v. Wade</u>, 388 U.S. 218 (1967), and <u>Gilbert v. California</u>, 388 U.S. 263 (1967), not retroactive); <u>Johnson v. New Jersey</u>, 384 U.S. 719 (1966) (interrogation rules of <u>Escobedo v. Illinois</u>, 378 U.S. 478 (1964), and <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), not retroactive); <u>Tehan v. Shott</u>, 382 U.S. 406 (1966) (<u>Griffin v. California</u>, 380 U.S. 609 (1965), rule against commenting on defendant's failure to testify not retroactive); <u>Linkletter v. Walker</u>, 381 U.S. 618 (1965) (exclusionary rule of <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961), not retroactive). The governing rule was set forth in Justice O'Connor's plurality opinion in <u>Teague v. Lane</u>, 489 U.S. 288 (1989). Justice O'Connor endorsed Justice Harlan's principles "that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." <u>Id.</u> at 303. The latter principle is subject to only two narrow exceptions, which Justice O'Connor adopted from Justice Harlan with some modification. First, a new rule should be applied to cases on collateral review if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." <u>Id.</u> at 311. Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. <u>Id.</u> at 312-13. The Supreme Court has limited the class of new rules which concern fundamental fairness to "watershed rules of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding." It has stated: "Whatever the

precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" Graham v. Collins, 506 U.S. at 478, quoting Teague, 489 U.S. at 311. In Teague, Justice O'Connor stated: "Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." 489 U.S. at 313.

Although the relevant portion of Justice O'Connor's opinion was a four-justice plurality opinion, her Teague standards have been applied by a majority of the Supreme Court, with some modification for sentencing rules, in a number of cases. See, e.g., O'Dell v. Netherland, 521 U.S. 151 (1997); Graham v. Collins, 506 U.S. 461 (1993); Sawyer v. Smith, 497 U.S. 227 (1990). As the Court explained in O'Dell v. Netherland, "[t]he Teague inquiry is conducted in three steps." 521 U.S. at 156. The first step is to determine whether the defendant's conviction became final prior to the new decision he invokes. If it did not, he is entitled to the benefit of the decision. If it did become final before the new decision, the second step is to determine whether the decision adopts a new rule. If it does not, again he is entitled to the benefit of the decision. If it did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision. If neither exception applies, the defendant is not entitled to the benefit of the decision and the inquiry ends.

In this case, Ezell's conviction became final well before June 17, 2013, the date of the Alleyne decision. Thus, the inquiry moves to the second step. The Supreme Court has defined a "new rule" as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. at 467; Sawyer v. Smith, 497

U.S. at 234; <u>Teague v. Lane</u>, 489 U.S. at 301 (emphasis in originals). A rule may be new even though it finds general support in prior cases. <u>Sawyer v. Smith</u>, 497 U.S. at 236. The test is whether, at the time <u>Alleyne</u> was decided, a "reasonable jurist" would have felt "compelled" to adopt the rule it stated. <u>O'Dell v. Netherland</u>, 521 U.S. at 164; <u>Graham v. Collins</u>, 506 U.S. at 477. Under this standard, <u>Alleyne</u> clearly adopted a new rule. Prior to its adoption, courts were compelled to follow the opposite holding in <u>Harris</u> (that a judge rather than a jury could find facts pertinent to a mandatory minimum sentence). <u>See</u> <u>Simpson v. United States</u>, F.3rd , 2013 WL 3455876 (7th Cir. 2013) (holding that <u>Alleyne</u> is a new rule).

Because <u>Alleyne</u> constitutes a new rule of procedure, the question remains whether it is subject to either of the exceptions outlined in <u>Teague</u> -- for new substantive rules which change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness. The fact that <u>Alleyne</u> is not subject to either of these exceptions is evident from earlier decisions regarding the <u>Apprendi</u> line of cases. Notably, in <u>Schriro v. Summerlin</u>, 542 U.S. 348 (2004), the Court held that the decision in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), does not apply retroactively to cases already final on direct review. In <u>Ring</u>, the Court applied the <u>Apprendi</u> principle to a death sentence imposed under the same Arizona sentencing scheme at issue in <u>Summerlin</u>. The <u>Ring</u> Court concluded that, because Arizona law authorized the death penalty only if an aggravating factor was present, <u>Apprendi</u> required the existence of such a factor to be proved to a jury rather than to a judge.

In <u>Summerlin</u>, the Court determined that <u>Ring</u> presented a new rule of procedure which was not retroactively applicable under the <u>Teague</u> formulation. First, it confirmed that <u>Ring</u> (and by extension, <u>Apprendi</u>) is in fact a procedural rule subject to <u>Teague</u>. The Court explained that substantive rules "narrow the scope of a criminal statute by interpreting its terms

[or] place particular conduct or persons covered by the statute beyond the State's power to punish . . . ." 542 U.S. at 351. In contrast, rules of procedure "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id. at 352. In a statement directly applicable to Alleyne, the Court concluded, "rules that regulate only the manner of determining the defendant's culpability are procedural." Id. at 353 (emphasis in original). "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision making authority in this fashion are prototypical procedural rules . . . ." Id.

The Summerlin Court also rejected the contention that the jury requirement for sentencing factors established in Apprendi and Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any . . . 'ha[s] yet to emerge.'" Summerlin, 542 U.S. at 352 (quoting Tyler v. Cain, 533 U.S. 656, 667 n.7 (2001); Sawyer v. Smith, 497 U.S. 227, 243 (1990)). The Court held that the jury requirement is not one: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy." Summerlin, 542 U.S. at 356 (emphasis in original).

"To fall within [the watershed] exception, a new rule must meet two requirements: Infringement of the rule must seriously diminish the likelihood of obtaining an

accurate conviction, and the rule must alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." Tyler, 533 U.S. at 665 (emphasis in original; internal quotations and citations omitted). Further, the Supreme Court has cautioned that "[t]he scope of the Teague exceptions must be consistent with the recognition that '[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.'" Sawyer, 497 U.S. at 242 (citation omitted). Summerlin held that the invalidated factfinding procedure regarding capital sentencing at issue there did not meet the definition of a fundamental rule permitting an exception to the requirement of finality.

This result is directly applicable to the Alleyne holding that facts which increase a statutory maximum sentence should be made by a jury rather than a judge. If, as in Summerlin, the requirement that a jury determine an aggravating factor which leads to imposition of the death penalty is not so fundamental to require retroactive application, surely the same holding applies to the sentencing issue to which Alleyne is addressed.

Indeed, applying all of the same reasoning, the Third Circuit (along with all other appellate courts) held that Apprendi itself was not applicable to cases on collateral review, see United States v. Swinton, 333 F.3rd 481 (3rd Cir. 2003); United States v. Jenkins, 333 F.3rd 151 (3rd Cir. 2003), nor was the decision in Booker v. United States, 543 U.S. 220 (2005), holding the Sentencing Guidelines unconstitutional if applied in a mandatory fashion based on judicial fact-finding, see United States v. Lloyd, 407 F.3rd 608 (3rd Cir. 2005). See also Reinhold v. Rozum, 604 F.3rd 149 (3rd Cir. 2010) (the Supreme Court decision in Cunningham v. California, 549 U.S. 270 (2007), which applied Apprendi and found the judicial factfinding in

California's sentencing scheme to be impermissible, was a new rule which, under <u>Teague</u>, does not apply retroactively to a conviction which predated <u>Apprendi</u>).

For these reasons, a claim of error under <u>Alleyne</u> may not be raised in a case, like this one, which became final prior to the <u>Alleyne</u> decision.

a.      **Procedural default**

In addition, Ezell procedurally defaulted the <u>Alleyne</u> issue by not presenting it on direct appeal.  An issue may not be raised under Section 2255 if there was a full opportunity for the defendant to be heard during the trial phase and on direct appeal.

In sum, "a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim.  If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations; if the claim was not raised, it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations (e.g., actual innocence or cause and prejudice, <u>see</u> <u>United States v. Frady</u>, 456 U.S. 152 (1982))."  <u>Withrow v. Williams</u>, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring).

The law requires that a defendant bring all of his claims, even constitutional claims, before the trial court and on direct appeal, or he is barred from raising them on collateral review.  "So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."  <u>Sunal v. Large</u>, 332 U.S. 174, 178 (1947).  To the extent that

b.  **Harmless error**

Finally, Ezell cannot obtain relief because any error in the imposition of the 84 month mandatory minimum sentence was harmless.  While it was error for the Court rather than

a jury to determine that a gun was brandished, the outcome would have been the same regardless of the identity of the factfinder.

Federal Rule of Criminal Procedure 52(a) provides that "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." This mandate applies before the district court as well as the Court of Appeals. <u>See</u> C. Wright, et al., Federal Practice and Procedure § 851 ("Rule 52, describing how courts are to treat various kinds of errors, applies to both the trial court and the appellate courts. It is relied on primarily by appellate courts, although the standards it sets out are controlling when a trial court is passing on a post-trial motion.).

The Supreme Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986) (citations omitted).

In this matter, any error is harmless. First, that result applies to the omission from the indictment of the enhancing fact of brandishing. The Supreme Court's decision in <u>United States v. Cotton</u>, 535 U.S. 625 (2002), is controlling; it held that the failure to allege a sentencing enhancement fact in an indictment is subject to Rule 52 (in that case, for plain error review, given the absence of a timely objection). <u>See also</u> <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 255-56 (1988) (irregularity in grand jury proceeding is subject to harmless error

review); <u>United States v. Zidell</u>, 323 F.3rd 412, 434 (6th Cir. 2003) (omission of element from indictment would be subject to harmless error review). The <u>Cotton</u> Court concluded that the asserted error -- the absence of an allegation of a drug quantity which increased the maximum sentence from a level below the sentences actually imposed on the defendants -- did not affect the defendant's substantial rights. Because "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base," <u>id.</u> at 633, the Court concluded that there was no error worthy of correction under Rule 52; <u>see</u> <u>Washington v. Recuenco</u>, 548 U.S. 212, 220 (2006) (holding that sentencing error in violation of the rule of Blakely v. Washington, 546 U.S 296 (2004) is not structural and is subject to harmless error review).

   The same conclusion applies here. In this case, in the 924(c) charge, the grand jury actually alleged that Ezell "did knowingly use and carry a firearm, and did aid and abet the using and carrying of a firearm, that is, a handgun, during and in relation to a crime of violence." Docket No.1. If it had been asked to include an allegation of brandishing in the 924(c) count, it surely would have.

   The fact that the enhancement issue was not presented to a trial jury is also subject to harmless error review. This issue is controlled by the decision in <u>Neder v. United States</u>, 527 U.S. 1 (1999). <u>Neder</u> involved the decision by a district court judge to reserve for himself, rather than submit to the jury, the decision about whether a defendant's false statements on tax returns were "material." The Supreme Court had ruled, after the district court decided the materiality issue itself, that the materiality element of a false statement charge must be submitted to the jury and decided beyond a reasonable doubt. <u>United States v. Gaudin</u>, 515 U.S. 506 (1995).

Neder concluded that the failure to submit an element to the jury is subject to harmless error analysis, requiring the court to "disregar[d]" errors that are harmless "beyond a reasonable doubt." Id. at 7, quoting Chapman v. California, 386 U.S. 18, 24 (1967). "In this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." 527 U.S. at 17.

That is the situation here. Ezell has never disputed that he and his accomplices brandished guns, nor could he, given that the robberies he committed fundamentally relied on such conduct. Thus, it is apparent that any factfinder, under any standard, would have reached the sentencing determination advocated by the government and adopted by the sentencing court. Accordingly, the error in not presenting the issue to the jury was harmless beyond a reasonable doubt. See, e.g., United States v. Pittman, 388 F.3rd 1104, 1109 (7th Cir. 2004) (absence of district court finding regarding defendant's age, for career offender purposes, was harmless, as that fact was never disputed); Campbell v. United States, 364 F.3rd 727, 737-38 (6th Cir. 2004) (sentence of 27 years was harmless error where once the jury found beyond a reasonable doubt that Campbell was involved in the conspiracy, "it could have had no doubt that the conspiracy involved more than one kilogram of heroin and more than five kilograms of cocaine;" the police seized 34 kilograms of cocaine and 2 kilograms of heroin on a single occasion from one of Campbell's coconspirators); United States v. Nelson-Rodriguez, 319 F.3rd 12, 48 (1st Cir. 2003) (evidence of more than half-kilogram was overwhelming; error was harmless); United States v. Anderson, 236 F.3rd 427, 429-30 (8th Cir. 2001) (error in not submitting quantity to jury, and applying sentence based on maximum penalty applicable to more than five grams of

methamphetamine, was harmless where it was "inconceivable that any rational jury could conclude that appellants conspired to produce fewer than five grams of methamphetamine").

In the related context of plain error analysis, appellate courts have found no error under Apprendi in failure to submit a drug quantity issue to the jury where the evidence was overwhelming. Plain error analysis, which is employed where the defendant has failed to make a timely objection, differs from the harmless error inquiry only in that the burden to show error is on the defendant rather than the government. But under either inquiry, there is no error if the result of the proceeding would have been unchanged. United States v. Olano, 507 U.S. 725, 734-36 (1993).

In a number of cases, courts have found harmless error or the absence of plain error under Apprendi where, as here, there was undisputed evidence in the record showing the relevant fact, and there was no chance that a jury would have found differently even under the reasonable doubt standard. See, e.g., United States v. Vazquez, 271 F.3rd 93, 104-06 (3rd Cir. 2001) (en banc) (affirming sentence of 24 years where evidence of quantity was overwhelming). See also Johnson v. United States, 520 U.S. 461, 469-70 (1997) (failure to submit materiality issue to jury under Gaudin was not plain error where evidence was overwhelming). The courts have uniformly held that Apprendi error is not structural but is subject to harmless error review, as have the courts that have addressed the issue in the context of Alleyne. See United States v. Harakaly, 734 F.3d 88, 94-95 (1st Cir. 2013). (holding that Alleyne error was harmless); United States v. Baylor, -- F. App'x ---, 2013 WL 3943145, *12-13 (4th Cir. Aug. 1, 2013) (unpublished per curiam) (finding Alleyne error harmless where record would have supported a jury finding of brandishing);United States v. Mack, 729 F.3d 594, 608 (6th Cir. 2013).(applying harmless error standard to Alleyne violation); United States v. Davis, 736 F.3d 783, 785 (8th Cir. 2013) (same).

For these reasons, any error in the resolution of the brandishing enhancement was harmless.

## VII.  THE COURT SHOULD NOT ISSUE A CERTIFICATE OF APPEALABILITY.

Upon the denial of a Section 2255 motion by the district court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. ' 2253.  The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The application for such a certificate should first be made to the District Court. Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue.  If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. ' 2253.  If an order denying a petition under ' 2254 or ' 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

The Third Circuit has further instructed that "as a matter of practice . . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court."  United States v. Williams, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

The defendant has failed to make a substantial showing of a denial of any constitutional right.  In order to present a 'substantial showing of a denial of any constitutional right,' in order to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial

showing of such an error in order to present an appeal.  <u>Santana v. United States</u>, 98 F.3d 752, 757 (3d Cir. 1996).

To establish the required showing, '[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question.  <u>United States v. Cepero</u>, 224 F.3d 256, 262-68 (3d Cir. 2000) (en banc), <u>cert. denied</u>, 121 S. Ct. 861 (2001).

For the reasons stated above, a certificate of appealability should be denied.  The absence of merit of the defendant's petition is plain, and not debatable.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests that all claims be dismissed without a hearing.  Alternatively, that petitioner be granted an evidentiary hearing on his claims of Ineffective Assistance of Counsel as to Grounds Three and Four of the original Pro Se Motion and Grounds Three, Four and Five of the Amended Motion, and that the remaining claims be dismissed.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

_/s/__Joan E. Burnes_____
JEFFERY W. WHITT
JOAN E. BURNES
Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

On this date, I caused to be served a true and correct copy of the foregoing

response on counsel by ECF filing and on pro se defendant by United States mail, first class

postage prepaid, addressed as follows:

Luther Weaver, III
L.E. Weaver & Associates, PC
1525 Locust Street, 14th Floor
Philadelphia, PA 19102

Jamal Ezell
Register No. 57081-066
USP Lewisburg
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA  17837

/s   Joan E. Burnes
JOAN E. BURNES
Assistant United States Attorney

Date: February 18, 2014